Cooper v. Douglass.

Ordered accordingly.

[MONROE GENERAL TERM, September 5, 1864. *J. C. Smith, Welles* and *E. Darwin Smith*, Justices.]

## COOPER *vs.* DOUGLASS and others.

In September, 1851, S., being about to embark as a cooper and mariner, on a whaling voyage, on the ship T., and having incurred an indebtedness to C. for outfits and supplies, executed to him an instrument reciting these facts, and assigning to C. all such wages, share and proportion of money, oil, &c. as might accrue or result from his employment on said ship or vessel, " *or in any other ship or vessel,*" in which he might " *contract to sail from time to time until the payment of such debt;*" and, if he should leave the *ship or ships*, all such clothing and effects as should be left, or the proceeds of the same if sold; to have and to hold to his own use, towards payment of the aforesaid debt, " *and also for all moneys &c. advanced to* " him, " *up to the time of settlement of such voyage or voyages and such debt.*" And he required and authorized the captain, owners and agents of said *ships or vessels* to pay and deliver to C. all such wages, share and proportion, &c., and appointed C.

his attorney irrevocable to demand, sue for and receive the same. C. sued upon this contract, seeking to extend its operation not only over the voyage and earnings of the ship T. and such other vessels as S. embarked upon, prior to his return home in 1857, after the voyage commenced in the ship T., but over an entirely new and independent voyage upon the ship J. undertaken by him in 1857, under a new and independent engagement made by him with the owners of that ship.

*Held*, 1. That the contract, notwithstanding the comprehensiveness of its language, was not designed by the parties to extend beyond the particular voyage specified in it, commenced in the ship T. and prosecuted, perhaps, partially in other vessels.

2. That if the true construction of the contract were that it embraced new and distinct adventures, not begun or contemplated, or in any way specified or defined in the instrument itself, then the contract was void or inoperative, as against a specific pledge or assignment of S.'s future earnings, shares of money, oil, &c. subsequently made to third persons.

3. That the contract must be regarded as in legal effect a contract to mortgage or pledge future earnings and property when they should come into existence, but not as having the effect of a *specific lien* upon such earnings and property.

4. That a specific lien could not attach until such property and earnings should come into existence, and then not by force merely of the original contract, but of some new act or contract conferring such lien. That if, before such new act was done, or contract made, the rights of a third person intervened, they would take preference of those springing out of the original contract.

The theory upon which future earnings, or the results of future labor, are sometimes allowed to be anticipated and appropriated to the payment or security of a present indebtedness, is that they are connected with a contract or employment already in existence, or are the fruit of advances made, or supplies furnished, to carry on the business out of which the future property or earnings arise; and then the pledge attaches, not to such property or earnings from the moment of the contract, but from the moment they spring into existence by virtue of the contract of the parties that they shall do so.

But this doctrine does not extend so far as to embrace the results of labor undefined in character and unrestricted in time, which arise out of an employment having no connection with the nature or object of the indebtedness, and having in fact no real or contemplated existence at the time the contract is entered into.

APPEAL by the plaintiff from a judgment in favor of the defendants, rendered on the 27th of June, 1864, by direction of Justice LOTT, on a trial had before him in Suffolk county, without a jury, in October, 1863.

*S. L. Gardiner,* for the plaintiff, (appellant.)

*George Miller,* for the defendant, (respondent.)

*By the Court,* HOGEBOOM, J.   This is an action by the plaintiff, as the assignee of one Isaac Stanborough, against the defendants as the owners of the ship Jefferson, to recover of the latter a balance alleged to have been due from them to Stanborough for his proportion (one fortieth part) of the earnings of the vessel and due to him as his wages for services thereon as a cooper and mariner.   The defense thereto is, that the plaintiff has no valid assignment of such a claim, or if he has, that the defendants have a superior right as assignees of Stanborough for debts owing by Stanborough to them, arising principally from outfits furnished to him, and supplies furnished to his family at his request.   The performance of the services, and the earning of wages, by Stanborough, are not denied, and the principal question is, whether the plaintiff has any valid transfer of the claim.   The plaintiff claims under two alleged assignments thereof—the first dated on the 22d of September, 1851, the second dated on 22d of April, 1861.   The defendants claim under an assignment made to them, or to Thomas Brown, one of them, on the 25th of August, 1857.   As the latter is conceded to be comprehensive enough to embrace the subject matter of the present action, and is prior in date to the last assignment to the plaintiff, of the 22d of April, 1861, the latter may be dismissed from further consideration as overreached by that to the defendants.   The question then arises between the two others.   The plaintiff's is conceded to be prior in date and execution, but it is claimed by the defendant either not to embrace the subject matter of the present action, or if it does so, then to be void as against public policy, or otherwise.

On the 25th of August, 1857, Stanborough having engaged to serve in the capacity aforesaid on the ship Jefferson, then about to commence a whaling voyage in the Arctic and Pacific

oceans, acknowledged himself indebted to the defendants, or some of them, in the sum of $795.37 for outfits furnished him, and in order to secure the same, assigned to Thomas Brown, one of the defendants, all his wages and proportion of the earnings of this vessel, or *of any other ship or vessel* in which he might contract to sail from time to time until the payment of such debt. To have and to hold for the payment of such debt and of all such moneys or merchandise as the said Brown should advance to or for him up to the time of the settlement of such voyage or *voyages,* and such debt, and authorising and directing the payment to said Brown by the officers, owners and agents of such *ships or vessels* of all such moneys and property as should accrue or result to him as the proceeds of the said voyages.

The money sought to be recovered in this action was a part of the proceeds of this voyage. It is conceded that no part of it was due or had been earned at the time of this assignment; and therefore in strictness it could not pass, at law, as a valid transfer of the earnings; but in equity, having reference to a particular voyage, upon a designated ship or vessel. Such voyage already commenced or about to be commenced, and for which the assignor had engaged his services, and those earnings having subsequently accrued in such designated vessel upon such specified voyage, and the debt having arisen in furnishing the mariner with means to undertake and prosecute the voyage, it has been regarded in equity as an equitable assignment of the claim to the creditor, and perhaps an equitable application of a future fund certain to arise in a manner specifically and precisely designated; or at all events a "precedent declaration" and transfer of a claim which if inoperative or imperfect at the time it was made, became operative and fixed as fast as the proceeds of the voyage accrued, to which, as property when thus accrued, the assignment would attach. All this is conceded and insisted upon, on both sides, as the effect of an instrument of this description. But the claim of the plaintiff goes

Cooper *v.* Douglass.

farther, and the question in this case arises upon a broader effect claimed for such an instrument upon a state of facts which will now be explained.

On the 22d of September, 1851, Stanborough, being about to embark as a cooper and mariner on a whaling voyage on the ship N. P. Tallmadge, and having incurred an indebtedness to the plaintiff for outfits and supplies for the voyage, executed to the plaintiff an instrument reciting these facts, which was otherwise, except as to the amount of the indebtedness, in precise conformity to the instrument hereinbefore recited, executed by Stanborough to Brown in regard to the ship Jefferson. It was in the following words: "Whereas I, Isaac Stanborough, owe Gilbert H. Cooper the sum of one hundred and forty dollars with interest until paid, for my outfits and supplies on board the ship or vessel called the N. P. Tallmadge, whereof Henry Edwards is master, and wish to secure to him the payment thereof: I do hereby assign to the said Gilbert H. Cooper all such wages, share and proportion of money, oil and bone or slush as may accrue, result from, or be the consequence of, my lay or contract in said ship or vessel, *or in any other ship or vessel in which I may contract to sail, from time to time, until the payment of such debt.* Also, if under any circumstances I should leave the *ship or ships,* all such clothing and effects of whatsoever kind as shall be left, or the proceeds of the same if sold, to have and to hold to his own use toward payment of the aforesaid debt *and also for all moneys or merchandise he shall advance to me and for me up to the time of settlement of such voyage or voyages, and such debt.* And also all money he shall pay for insurance on said voyage or voyages, the overplus, if any, to be paid to me; and I require and authorize the captain, owners and agents of said *ships or vessels* to pay and deliver to the said Gilbert H. Cooper all such wages, share and proportion of money, oil, bone and slush, as may result or accrue to me, and do hereby make the said Gilbert H. Cooper my attorney irrevocable to

demand, sue for and recover the same ; hereby ratifying all his acts."

After this instrument was executed, Stanborough proceeded on his voyage in the Tallmadge, left her at the Sandwich Islands and embarked on the Washington and subsequently on other vessels, and did not return home till 1857. In the meantime the plaintiff, in addition to the sum named in the assignment, furnished his family with money and necessary supplies until the debt reached the sum of $1200. On the return of Stanborough the plaintiff prosecuted him and obtained judgment for the balance of his debt, a part having been realized and paid to him by the owners of the Tallmadge on the return of that vessel to the port of Sag Harbor ; on which occasion an accounting and settlement took place between the plaintiff and the owners of the Tallmadge, but a balance still remained due to the plaintiff, to recover which is the object of the present action.

The effort of the plaintiff now is, to extend the operation of the contract of 1851 not only over the voyage and earnings of the Tallmadge and such other vessels as Stanborough embarked upon, prior to his return home after the voyage commenced in the Tallmadge, but over the entirely new and independent voyage undertaken by the Jefferson in 1857, under a new and independent engagement made by Stanborough. And this is claimed to be legitimate under the language of the contract of 1851, which assigns to the plaintiff Stanborough's earnings not only on the Tallmadge, *but in any other ship or vessel in which he might contract to sail from time to time, until the payment of the debt.* And the debt is claimed to be enlarged so as to cover future indebtedness, by that clause in the contract which pledges the earnings not only for the payment of the original debt, but *for all moneys or merchandise advanced up to the time of settlement of such voyage or voyages and such debt.* And it is insisted that as these moneys were advanced on the faith of this contract, there is an equitable pledge of future property

and earnings, good not only as to the specific voyage then contemplated and expressed, but as to future voyages not then anticipated and as to which, and whether they would be made or not, and if made, the vessels in which they were to be made and the time they were to be undertaken, every thing was wholly indefinite and uncertain.

I am of opinion that this construction of the contract, especially in view of the facts of this case, can not be successfully maintained, and ought not on principle to be supported.

1. Although the language of the contract is quite broad and comprehensive, I doubt very much whether it was ever designed by the parties to extend beyond the particular voyage specified in the contract commenced in the particular vessel therein named, and prosecuted, it may be, partially on other vessels in which before the close of the particular adventure, the mariner should engage. The object, I think, of referring to other vessels was not to provide for distinct and independent ventures undertaken after the particular one was consummated by the return of the mariner, but to provide for the well known habit of sailors dissatisfied with the particular vessel in which they had embarked, or its management, of abandoning such vessel and entering upon others more likely to prove agreeable or profitable. It may be that the learned justice who tried this cause concluded, in the light of the evidence, that such was the practical construction given to this contract by the parties engaged in it, in conformity with a known and established practice; and if the case authorizes us to infer that such may have been his conclusion, perhaps that is enough to dispose of this case, as the plaintiff has not procured any finding of facts or of law showing that he put his decision upon a different ground. It may be said, indeed, that it is not a question of practical construction, but of legal interpretation of a contract containing words of ambiguous meaning, or susceptible of a double construction. But 1 am not sure that the language of the contract

is so plain upon its face as to render inadmissible the interpretation of it which the plaintiff claims, to wit, that the phrases contained in it, in regard to other ships or vessels, were intended to refer exclusively to other ships or vessels in in which the mariner might engage before the conclusion of the specific adventure which was the main subject of the contract. It appears that after the return of the Tallmadge the plaintiff settled with her owners and managing agent as if the time had arrived for closing up the subject matter of the contract, although this is not perhaps quite decisive to show that there were not still some matters left unsettled between the plaintiff and other parties.

2. But if the true construction of the contract be that it embraces new and distinct adventures not began or contemplated or in any way specified or defined in the contract itself, then I think the contract is void or inoperative as against a specific pledge or assignment like that of the defendants, for some one or more of the following reasons :

(1.) If the earnings and proceeds of future voyages and adventures may be thus pledged, then they may be thus disposed of to an indefinite extent and for an unlimited time. All future property may be incumbered before it has an actual or even a potential existence. All future earnings may be appropriated not only before they have come into existence, but before the time, place, occasion. or source from which they are to proceed or in which they are to be manifested, can be in any way known. This wholesale pledge of a man's expected and possible acquisitions and complete servitude of a man's future labor, would be, I think, so much against public policy—so incapable of being bound down by any definite or precise limits—that it would and.ought for those reasons to be considered void.

(2.) At law it seems quite obvious that any attempted pledge of an interest so unreal, indefinite and uncertain would be void. And in equity it would seem that as there is no substantial interest to pledge, and no defined nor declared

source from which a future interest is to proceed, nothing, but what is merely imaginary and conjectural for the pledge to fasten upon, that it had not a sufficient basis to operate as the foundation of a present pledge, or as the nucleus of a future one.

(3.) The theory, as I understand it, upon which future earnings or the result of future labor are sometimes allowed to be anticipated and appropriated to the payment or security of a present indebtedness, is that they are connected with a contract or enployment already in existence, or are the fruit of advances made or supplies furnished to carry on the business out of which the future property or earnings arise; and then the pledge attaches not to this property or these earnings, from the moment of the contract, but from the moment they spring into existence by virtue of the contract of the parties, that they shall do so. But I think this doctrine has not been carried, except in a few cases, which do not seem to be well considered, to such an extent as to embrace the result of labor undefined in character and unrestricted in time, which arise out of an employment having no connection with the nature or object of the indebtedness, and having in fact no real or contemplated existence at the time the contract is entered into.

(4.) I think, therefore, the contract in this case must be regarded as in legal effect a contract to mortgage or pledge in the future, future earnings and property when they shall come into existence—having it may be the effect of an obligatory *contract* as between the parties, for the breach of which the defaulting party may be liable in damages— but not having the effect of a *specific lien* upon these earnings and property themselves. That this specific lien can not attach until this property and these earnings come into existence, and then not by force merely of the original contract, but of some new act or contract conferring such lien. That if, before such new act is done, or contract made, the rights of a third person intervene, they take preference of

those springing out of the original contract. That at all events, in a case like the present, the rights of the plaintiff to a pledge or mortgage of the property do not attach until the property comes into existence; and if before that time these anticipated earnings or property are pledged for supplies and advances in the manner they were to the defendants in this case, they take preference of the mere loose and undefined rights, such as those which grow out of the plaintiff's contract.

The general doctrine on this subject is well discussed by Mr. Justice Paige in the case of *Otis* v. *Sill,* (8 *Barb.* 102.) The entire opinion is learned and instructive, but too long for extensive quotation. It was an action of replevin to recover certain iron and steel and scythes. The plaintiff claimed the same under a chattel mortgage, which contained this clause: "All scythes manufactured out of the said iron and steel, and all scythes, iron, steel and coal which may be purchased in lieu of the property aforesaid." The articles replevied were not in existence at the time of the mortgage. The defendant justified under judgments and executions against the mortgagor. The court held, in substance, these propositions: 1. A mortgage professing to sell and assign to the mortgagee not only the scythes, iron, steel and coal then owned by the mortgagors, but also "all scythes, iron, steel and coal which may be purchased in lieu of the aforesaid property" is, as respects the property to be subsequently acquired, *void for uncertainty.* 2. At law a grant or mortgage of property not then in existence or not belonging to the mortgagors, but to be acquired *in futuro, is void.* 3. If such a grant or mortgage is valid in equity, it is only valid *as a contract to assign when the property shall be acquired.* And if it is enforced in equity, it can only be enforced as a *right under the contract,* and *not as a trust attached to the property.* 4. Where a mortgage upon scythes, &c. to be subsequently acquired does not mention any scythes, &c. in particular, but mentions generally all property of that descrip-

Cooper *v.* Douglass.

tion which may be subsequently purchased by the mortgagors, the mortgage does not become a *specific lien* on the subsequently acquired property from the time, the same is purchased, as against the mortgagors and persons claiming under them. 5. Such mortgage can only be regarded as a mere contract to give a further mortgage on the subsequently acquired property, binding on the mortgagors personally. And the only remedy of the mortgagee on such a contract is by an action as a general creditor, to recover damages for a breach thereof.

It may be said that inasmuch as Cooper gave notice to Brown of his equitable claim, before the latter took his assignment or security upon the property, the latter was a mortgagee *with notice,* and hence his rights must be postponed to those of Cooper. But I think the answer is, that Cooper was not in fact a mortgagee of the earnings of the Jefferson, but a mere contracting party with Stanborough, and that Brown had a right, even though he had notice of such a contract, to agree with Stanborough for a specific lien upon his earnings in that vessel, especially if his debt arose out of outfits or supplies furnished him for carrying on the voyage. The generality and looseness of the expressions in the contract of 1851, as applied to any other vessel than the Tallmadge, the indefiniteness and uncertainty of the description of the subject matter, the unlimited range of time over which the effect of the contract was to extend, the class and incumbrances which such agreements if valid would inevitably fasten upon personal property without even the necessity of filing the paper as a chattel mortgage, and the hopeless servitude which they would impose upon personal rights and liberty, are considerations, as it appears to me, of sufficient magnitude to justify us in declaring them void and inoperative, if not against the mortgagor, himself, at least against a subsequent creditor even with notice, who makes an agreement for a specific lien upon the proceeds of a specified

voyage in a designated vessel, founded upon a consideration so meritorious as that arising from furnishing the supplies by virtue of which alone the voyage can be prosecuted.

I am of opinion that the judgment should be *affirmed with costs.*

[KINGS GENERAL TERM, December 12, 1864. *Hogeboom, Lott* and *J. F. Barnard,* Justices.]