WILLIAM THOMPSON, RESPONDENT, v. CORNELIUS P. VROMAN, APPELLANT.

*Conversion — deposit in bank in one's own name of another's funds — wrongful withdrawal and appropriation thereof — fiduciary capacity — finding of referee — bank account in evidence under stipulation.*

Where a complaint states facts showing that a deposit in a bank by the defendant in his own name, of funds delivered to him by the plaintiff, was a wrongful appropriation thereof, and alleges a conversion by the wrongful withdrawing and use of the money, the action is one for wrongful conversion, although the complaint does not characterize the deposit as a conversion. (MAYHAM, P. J., dissenting.)

The General Term will not reverse a judgment, entered upon the decision of a question of fact by a referee, unless the evidence in favor of the appellant greatly preponderates.

The refusal of a referee to find that a complaint, which plainly alleges a conversion, contains a cause of action in tort, is not a ground for reversal, especially where the referee does find that the defendant was guilty of a conversion of the money in suit. (MAYHAM, P. J., dissenting.)

A statement in a camplaint of facts showing that the defendant received the money in suit to deposit it in a bank for the plaintiff, in effect alleges that the fiduciary relation of principal and agent existed, although the word "fiduciary" is not used.

A finding that the defendant received the money in suit as the agent of the plaintiff to deposit it in a bank is, in effect, a finding that the defendant was acting in a fiduciary capacity.

Where an agent receives money from a principal to deposit in a bank in the principal's name, it is proper for a referee to refuse to find that such agent was in no way acting in a fiduciary capacity.

In an action to recover the amount of certain money of the plaintiff, alleged to have been deposited in a bank by the defendant in his own name, and to have been wrongfully withdrawn and converted by the defendant to his own use, a statement of the defendant's bank account, taken from the books of the bank, was admitted in evidence for the plaintiff under a stipulation that the statement was correct and a true copy of the books kept by the bank, and showed the deposits to the credit of the defendant and the amounts drawn out, and that "said statement may be read in evidence on the trial in this action as original evidence, and as equal evidence with the books."

*Held,* that the statement was properly admitted under the stipulation. (MAYHAM, P. J., dissenting.)

Where the evidence is sufficient to sustain findings of a referee that there was a wrongful deposit of the money in suit in a bank by the defendant in his own name, and also a wrongful withdrawing and conversion thereof, no demand by the plaintiff, prior to the commencement of the action, is necessary, and, therefore, an exception by the defendant to a ruling of the referee, admitting in evidence a letter offered in order to show such a demand, is not well taken.

In an action to recover money alleged to have been deposited in a bank by the defendant for the plaintiff, and to have been wrongfully withdrawn by the defendant, it is competent for the plaintiff to show that the withdrawal was not with his consent; and by way of proving such negative fact the plaintiff should be allowed to state, on his examination, that he did not consent. (MAYHAM, P. J., dissenting.)

APPEAL by the defendant Cornelius P. Vroman from a judgment of the Supreme Court, entered in the office of the clerk of the county of Schoharie on the 28th day of November, 1891, on the report of a referee, for $1,188.50, with interest and costs.

On the trial before the referee the plaintiff was permitted, under defendant's objection and exception, to give in evidence a statement of the defendant's bank account, together with a stipulation signed by the attorneys for the respective parties in the words ·following:

"It is hereby admitted that the above statement of account of Cornelius P. Vroman (the defendant in the action of William Thompson against Cornelius P. Vroman) with the firm of Henry R. Pierson & Son, formerly doing business at Albany, N. Y., is correct, and a true copy of the books kept by said bank. That the right hand column of figures and amounts shows the deposits with said bank or banks to the credit of said defendant, and the left hand figures the amounts of money drawn out of said bank or firm of bankers, and that the balance, $182.26, was the amount due from said bank or bankers to defendant, at the time of their failure, on or about the —— day of January, 1890, and that this admission is not to be any evidence as to the disputed fact as to which of the two, the plaintiff or defendant, personally made the deposit with said bank or bankers of the item of $1,000, conceded by the complaint and answer to have been deposited.

"It is also conceded and admitted that said $1,000 was part of the plaintiff's pension money stated in said pleadings, and that said statement may be read in evidence on the trial in this action as original evidence, and as equal·evidence with the books."

The plaintiff was also permitted, under objection and exception, to give in evidence the following letter from plaintiff's attorneys to the defendant, which is referred to in the opinion of the court as Exhibit "D:"

"SCHOHARIE, *April* 3d, 1890.

"Mr. CORNELIUS VROMAN:

"DR. SIR.— We have been retained by William Thompson (colored) to commence action against you for the recovery of the pension moneys you have used belonging to him. We have a full statement showing that you took up his money from H. R. Pierson & Son before their failure, and that your statement to Thompson (if he informs us correctly) ' that his money was lost,' is a mistake. We would like to avoid a law-suit, if it can be done. The claim is now in our hands for adjustment and collection. Please give this your immediate attention and oblige.

"Yours truly,
"HINMAN & DUGAN."

The pleadings and other facts are set forth in the opinions.

*D. S. Mayham* and *C. B. Mayham*, for the appellant.

*Hinman & Dugan*, for the respondent.

PUTNAM, J.:

This action is brought for the wrongful conversion of $1,000. The complaint alleges that on the 26th day of May, 1887, plaintiff delivered to the defendant the sum of $1,000, with directions to place the same on deposit with H. R. Pierson & Son, bankers in Albany, N. Y., to remain there on interest for the benefit of plaintiff. Defendant receiving and agreeing to so deposit said money, in fact, deposited the same to his own credit. He was not the owner of and had no interest in said money. That the same belonged to plaintiff. That thereafter and prior to October 5, 1888, defendant, without the knowledge or consent of plaintiff, unlawfully withdrew said money and unlawfully appropriated and converted the same to his own use.

While the complaint does not characterize *the deposit* of this money by defendant in his own name as a conversion, yet it states all the facts, showing that such deposit by defendant was a wrongful appropriation of the fund. And the complaint also alleges a conversion by the wrongful withdrawing and use of the said money.

Defendant, in his answer, alleges that the deposit of the said money

in his own name was done with the knowledge and consent of the plaintiff, and denies any wrongful appropriation of the same.

The case presents a question of fact, which the referee has determined in favor of the plaintiff. I have examined the testimony given upon the trial and the briefs submitted by counsel with care. The evidence was conflicting, and the referee might have reached a different conclusion from that arrived at. There was testimony in the case from which he could have determined that the money in suit was deposited in the defendant's name with the consent of plaintiff. But I think there was sufficient evidence given to sustain the referee's finding on the question presented for his decision. The rule is familiar that on questions of fact the appellate court will not reverse unless the evidence in favor of the appellant greatly preponderates. Authorities sustaining this rule are cited by respondent and need not be discussed here. I think that this case does not present such a preponderance of evidence of the defendant as will justify a reversal of the judgment. On the contrary, if it were my duty to pass upon the testimony as an original question, I should hesitate before coming to a different conclusion from that reached by the learned referee.

Counsel for appellant suggests that the referee erred in declining, at defendant's request, to find that, " The complaint alleges a cause of action in tort, not contract," and also in refusing to find that, " In order to maintain this action in its present form, it must affirmatively appear that the defendant has been guilty of conversion." These errors, if they should be deemed such, are harmless. The complaint clearly alleges a cause of action in tort, and I see no reason why the referee should characterize it. The defendant has suffered no injury by his declining to find that a complaint plainly alleging a conversion contains a cause of action in tort. Again, in his findings, the referee distinctly determines that the defendant was guilty of a conversion of the money in suit, and a refusal to repeat the finding can produce no injury.

The referee did not err in declining to find that " defendant was in no way acting in a fiduciary capacity." He did find, properly, on the evidence in the case, that the defendant received $1,000, as the agent of plaintiff, to deposit, hence defendant was acting in a fiduciary capacity. But it is suggested that there was no allegation in

the complaint that a fiduciary relation existed. It is true that the complaint does not use the word "fiduciary." But facts are stated showing that defendant received the money to deposit, and hence that the relation of principal and agent existed. Where an agent takes money from a principal to deposit in a bank in the principal's name, it cannot be said that the agent was "not, in any way, acting in a fiduciary capacity." (See *Flagg* v. *Ely*, 1 Edm., 206.) Hence the above request of the defendant to find was properly refused by the referee.

I think the error of the court below, if any, in overruling the objection to this question, asked of plaintiff, viz., "Did you make an application for a pension on account of your son being killed in the war?" harmless. The error could not possibly produce any injury to the defendant.

The statement from the books of the bank was properly received in evidence under the stipulation. That stipulation provided that the statement might be read as original evidence; that it was correct as to the amount of deposits to the credit of defendant, and the amount drawn out by him.

As we have seen, the evidence in the case is sufficient to sustain the findings of the referee, that there was a wrongful deposit of the money in suit by defendant in his own name, and also a wrongful withdrawing and conversion of said fund. Hence, no demand, prior to the commencement of the action, was necessary to be made by the plaintiff, and, therefore, the exception to the ruling of the referee admitting Exhibit "D" was not well taken.

It is insisted that the referee erred in overruling objections to the following question asked of plaintiff, viz.: "Did you consent that Mr. Vroman, defendant, should draw this $1,000 from the H. R. Pierson & Son bank? Objected to. * * * No, sir; and I did not consent that he might use it; I did not know that he had done so; I knew nothing about it until the bank had failed." I think the question was properly allowed to be answered as calling for a fact. That the case was one where the plaintiff could properly show a negative. It was competent for the plaintiff to establish the fact that the withdrawal of the funds by the defendant was not one with his consent. This fact could only be shown in the way

allowed by the referee. (See *Crane* v. *Baudouine*, 55 N. Y., 263; *Iluggans* v. *Fryer*, 1 Lans., 277; *People* v. *Tubbs*, 37 N. Y., 589; *Crouse* v. *Garlock*, 45 How., 85.)

There are other exceptions taken not necessary to be considered. The judgment should be affirmed, with costs.

HERRICK, J., concurred.

MAYHAM, P. J. (dissenting):

The complaint in this action alleges that the plaintiff delivered to the defendant $1,000, with direction to him to deposit the same with the firm of H. R. Pierson & Son, to remain there on interest for the benefit of the plaintiff, and that the defendant did deposit the same with said firm.

That defendant had no interest in the money, but the same belonged to the plaintiff. The complaint charges that the defendant afterwards wrongfully withdrew this money from said firm, and wrongfully converted the same to his own use, and demands judgment for $1,000 and interest.

The answer denies, in substance, that the defendant agreed to deposit this money for plaintiff, and alleges that the plaintiff directed that defendant should deposit the same to his own credit as his own, and that the plaintiff was to look to him for the same.

The answer also alleges that, from time to time, the plaintiff called upon the defendant for payments on account of said money and received from the defendant various payments on account of the same. The answer also sets up offsets and counter-claims. The main question litigated in this action was, whether the money was received by the defendant in the nature of a loan to be deposited with the defendant to be accounted for by him to the plaintiff, or was received by him solely for the purpose of being by him deposited with Pierson & Son in the name of and to the credit of the plaintiff and subject only to his check.

If the latter, then his withdrawing it from the bank in his own name was a conversion; if the former, then the title to the money vested in the defendant, and he became the debtor of the plaintiff in that amount, and was liable only for money had and received, and an action for a conversion of this money would not lie.

To constitute a conversion by one person of the property of another, the title to or right of possession of the money converted must be in the plaintiff, and the possession of the same must be wrongfully taken or detained by the defendant.

Ordinarily, where a party seeks to recover for the conversion of a chattel, he must show his right to the identical chattel which he claims has been converted.

If the money was loaned, so that the claim of the plaintiff against the defendant was for the value of the money and not the identical money itself, then the title to the same vested in the defendant and trover would not lie. In *McNaughton* v. *Cameron* (44 Barb., 409) the court say : " It all depends upon the question whether the title to the money passed to the defendant." If, therefore, this money or this check was delivered by the plaintiff to the defendant to be deposited · in his name to his credit, the title to the same passed to him and he became the debtor of the plaintiff, and, on its deposit in the bank by the defendant to his credit, the title vested in the firm of bankers, and they became the debtors of the defendant.

As this money was not held by the Piersons as a special deposit, they did not take it as bailees, but as owners ; and the relation of debtor and creditor was established between them and the defendant, and the same was true as between the plaintiff and defendant (*Com. Bank of Albany* v. *Hughes*, 17 Wend., 94), unless the defendant fraudulently converted the pension check by procuring the same to be deposited to his credit without the knowledge or consent of the plaintiff.

If this money was properly in the Pierson bank to the credit of the defendant, then, as we have seen, it became the general property of the Piersons, who became the general debtors of the defendant, who alone could draw it from them on his own checks, and he, in like manner, became the debtor of the plaintiff and liable to him only in an action for money had and received, and could not be charged in trover for an unlawful conversion of the same.

But it is not charged in the complaint that the defendant wrongfully converted this money by wrongfully depositing it to his credit with Pierson & Son, but that he wrongfully withdrew $1,000 of this money and converted it to his own use.

The first question presented by the case is, was there any unlaw-

ful taking of the check deposited in the bank of Pierson & Son? Second. Was there a conversion of said property by withdrawing this money from the bank by defendant?

The whole tenure of the evidence seems to be that the plaintiff delivered the pension check to the defendant to be deposited by him in his name in the Pierson bank, as he had already accounts with that bank, and, as the plaintiff could not draw checks for the same in his own name, the money was to be deposited in the name of the defendant, and the plaintiff was to look to him for money when he wanted the same. This appears directly from the testimony of the defendant, and his theory is strongly corroborated by the testimony of William J. Vroman, Mead J. Vroman, John F. Shafer and Albert C. Judson, as well as the reasonable inference to be drawn from the fact that whenever plaintiff wanted money he called on the defendant for the same instead of the bank, and never applied to the bank for any money.

The case shows that he asked for and received from time to time different amounts of money from one hundred dollars to fifty cents, consisting of nearly fifty items at different times from the time of the deposit of this money in the bank down to near the time of the commencement of this action.

From these facts it seems to me to be conclusively established that the title to this money, deposited to the credit of the defendant, passed to him and from him to the bank, and that the defendant's subsequent withdrawal of the same, or any part of it, was not a conversion, but was a lawful exercise of dominion over a debt due him from the bank, and that the payment made by him to the plaintiff was in no sense a return of money which he had wrongfully converted, but was payment upon a debt which he owed the plaintiff. Conversion is a tortious act by which the defendant deprives the plaintiff of his goods. (*Spencer* v. *Blackman*, 9 Wend. R., 163.) And the plaintiff in this action assumed the burden of proving the wrongful taking or detention of this $1,000, and the court cannot relieve him of that burden by presuming, in the absence of proof or against the weight of the evidence, that the defendant has been guilty of a wrong. Presumption is always in favor of honesty and fair dealing, and remains available to the party in whose favor it arises, until overcome by countervailing evidence. (1 Rice on

Ev., 96; *Louisville, N. A. and C. Ry. Co.* v. *Thompson,* 5 West., Rep., 833; 107 Ind., 442.)

As we have seen, the complaint does not allege the conversion of the pension check, but charges the wrongful withdrawal and conversion of $1,000 from Pierson & Son, bankers, and for that amount plaintiff is allowed to recover. The evidence shows that at the time of the commencement of this action the defendant had standing to his credit in this bank $1,436.31, out of which at that time he had drawn the sum of $1,253.05, leaving a balance in the bank of $182.26. If the conversion of this money consists in its withdrawal from the bank, as charged in the complaint, then the sum remaining in the bank was the money of the plaintiff, and the defendant could only be charged with the conversion of the $1,000, less the sum of $182.26, so that the recovery upon the plaintiff's theory should have been only for the sum of $817.74, and interest from the time of drawing the same by the defendant.

The plaintiff cannot properly charge that the defendant drew out plaintiff's money and left his own in the bank, especially in the absence of proof upon that subject. Nor can he, for the purpose of assuming that position, recover for the conversion of this check, when he claims in his complaint to recover only for money improperly drawn out of the bank, and not for the conversion of the check or of the money by depositing it in the bank in his own name.

If this action had been prosecuted for the conversion of this money by the defendant by depositing it in the bank in his own name, and no charge had been made for the withdrawal of it by the defendant, the plaintiff would most signally have failed upon the proof, and hence the plaintiff makes no charge of the conversion of the money by the defendant by depositing the same in his own name, and as the wrong charged consists in the withdrawal of the money, the defendant could, in any event, only be charged with so much as the proof clearly established was withdrawn by him, and as he was permitted to recover for $182.26 in excess of the amount actually withdrawn by him, the judgment is erroneous, even if it can be held that the withdrawal of any of this money from the bank was a conversion of the amount so withdrawn.

The referee in this case holds that the defendant, in effect, received this money in a fiduciary capacity, and that his depositing

the same in his own name was a conversion of the same. No such allegation is contained in the complaint, and, as we have seen, that the conversion charged was for withdrawing the same from the bank, the recovery is based upon a state of facts and legal conclusions not set out in the complaint, and no motion has been made to conform the complaint to the facts proved or found by the referee.

This cannot be done under the Code any more than it could under the system of pleadings existing before the Code. In *Southwick* v. *First National Bank of Memphis* (84 N. Y., 429), EARL, J., in discussing the question, uses this language : "Pleadings and a distinct issue are essential in every system of jurisprudence, and there can be no orderly administration of justice without them. If a party can allege one cause of action, and then recover upon another, his complaint will serve no useful purpose, but rather to ensnare and mislead his adversary."

In *Romeyn* v. *Sickles* (108 N. Y., 650), the court say : "It is a fundamental rule that judgment shall be *secundum allegata et probata*, and, as was said in *Day* v. *Town of New Lots* (107 N. Y., 148), any departure from that rule is certain to produce surprise, confusion and injustice."

This fundamental and elementary rule was clearly departed from by the referee in this case. The defendant was not charged in the complaint, either in direct terms or by implication, with receiving this money in a fiduciary capacity, and yet the referee expressly refuses to find, on the request of the defendant, and thus, in effect, held that the defendant received and held this money in that capacity.

In *Hillis* v. *Bleckert* (53 Hun, 500), which was an action for the conversion of money, BRADLEY, J., says : "There is no allegation in the complaint that the money mentioned was received by the defendant in a fiduciary capacity, and it is, therefore, deficient in an essential element. A statement of facts and circumstances which might justify the legal conclusion of money received in a fiduciary capacity does not comply with the statute, inasmuch as it requires such an allegation to be made in the complaint, and declares that the plaintiff cannot recover unless he proves the same on the trial."

It is true that this was said when an order of arrest was applied for, but it, at the same time, illustrates the rule of pleading in actions

of *tort* for the conversion of money which comes to the possession of the defendant with the consent of the plaintiff.

I am also of the opinion that the referee in this case erred in the admissions of copies of the bank-books in evidence. The stipulation, at most, only made the copy evidence, if the books themselves were competent under the proof. This made it incumbent on the plaintiff first to prove, in the regular way, the authenticity and correctness of the books before the transcript could be received in evidence. That was not done in this case. It can hardly be claimed that the bare production and proof of identity of the books of the bank would authorize them to be read in evidence against the defendant. In 2 Rice on Evidence (p. 894), the learned author says : " The books of a bank, like those of a merchant or shopkeeper, must be proved by suppletory proof oath of some officer or agent of the bank. * * * Before the records and books of a corporation can be received in evidence, it must be admitted or proved that the entries were made by an authorized agent of the corporation."

No such proof was given or offered in this case, and the proper foundation for the introduction of the books not having been laid, the transcript was not, by stipulation, made evidence.

I am also of the opinion that the question put by the plaintiff's counsel to the plaintiff, " Did you consent that Mr. Vroman should draw this one thousand dollars from H. R. Pierson & Son's bank ? " was not proper, and that the admission of the answer, under defendant's objection, was error.

Whether or not he consented, and what amounted to a consent was the principal question to be litigated in this case. That question was to be determined by the referee from the facts, circumstances and conversations relating to the entire transaction, and while it was competent for the plaintiff, as a witness, to tell what was said, it was not, I think, competent for him to give a sweeping conclusion determining the whole theory of the defendant's defense. He should have been confined to giving the conversations, and the referee should make his deductions from the same. In *Teerpenning* v. *The Corn Exchange Insurance Company* (43 N. Y., 281), ALLEN, J., says : "As a rule, witnesses must state facts, and not draw conclusions or give opinions. It is the duty of the jury or court to draw conclusions from the evidence and form opinions from the facts proved."

I am, therefore, of the opinion that the judgment should be reversed and the referee discharged and a new trial granted, costs to abide event.

Judgment affirmed, with costs.