LEARNED, P. J., and LANDON, J., concurred.

Judgment affirmed, with costs.

55 261
26ap206

SUSANNA FAULKNOR, RESPONDENT, *v.* NICHOLAS H. SWART AND OTHERS, APPELLANTS.

*Counter-claim, acquired by a debtor after an assignment of the claim against him, may be set off against such claim in the hands of an assignee who has not given notice of the assignment thereof.*

One Faulknor agreed to work for Nicholas H. Swart and others, defendants in this action, on January 31, 1887, from which time he worked until May 2, 1887. On February 1, 1887, he agreed with his mother that she should have his earnings for this work, of which agreement Swart and his co-defendants had notice only by the commencement of an action begun in January, 1888, to recover the same.

On May 13, 1886, Faulknor became indebted to the defendant Swart, and on August 17, 1887, Swart assigned to each of his two co-defendants one-third of his claim arising out of this indebtedness.

In an action, brought by the mother of Faulknor under the assignment of his earnings:

*Held*, that such agreement between Faulknor and his mother did not operate as an assignment in law of the indebtedness, but was an equitable assignment which a court would enforce as operating upon the indebtedness, as it from time to time arose.

That no notice having been given of this assignment prior to August 17, 1887, when the two-thirds of the claim against Faulknor were assigned by Swart to his co-defendants, such claim constituted a valid set-off in the hands of Swart and his co-defendants to the claim made by Faulknor's mother under the prior assignment.

If an assignee of a claim desires to protect himself against the purchase by the debtor, of claims against his assignor, he must give notice of the assignment to the debtor. If he neglect to do this, and the debtor purchase in good faith any valid claim against his original creditor, he may set it up as a counter-claim when sued upon such obligation, although such obligation may have been assigned prior to his purchase of the claim so set off against it.

APPEAL by the defendants from a judgment entered, after a trial before a referee, in the office of the clerk of the county of Montgomery, on the 14th day of June, 1889.

The complaint alleged, that on or about the 1st day of February, 1887, one Joseph S. Faulknor entered into an agreement with the defendants whereby the defendants agreed to pay said Faulknor the sum of three dollars a day as manager to operate and run the grist-mill and saw-mill at Mill Point, Montgomery county, New York, owned by the defendants; that pursuant to said agreement the said Joseph S. Faulknor, on or about the 1st day of February, 1887, entered upon the discharge of his duties, and so acted up to and including the 2d day of May, 1887, and that the services rendered and disbursements made, reached in the aggregate $424.16. That when said agreement was entered into between said Joseph S. Faulknor and the defendants it was agreed between the plaintiff, Susanna Faulknor, and said Joseph S. Faulknor that all wages or salary earned by him, together with all moneys expended by him as manager, were to be the moneys of the plaintiff, and all claims for wages so earned and moneys expended were, upon the making of such agreement, duly assigned and transferred by said Faulknor to plaintiff.

The defendants, among other things, alleged that about the 10th day of February, in the year 1886, one Joseph J. Faulknor, since deceased, made his promissory note, payable three months after date, which was duly indorsed by Joseph S. Faulknor, the payee therein

named, and was delivered to Nicholas H. Swart for value, who thereupon became the owner thereof; that said note was presented for payment and payment refused, and the indorser, said Joseph S. Faulknor, duly charged as such indorser; that on the 17th day of August, 1887, the said Nicholas H. Swart, who was then the owner of said note, assigned and transferred to the defendants Henry S. De Forest and James J. Bradshaw to each an equal undivided third part of the said note, and of all claims of Nicholas H. Swart against the maker and indorser thereof.

It is important to notice the relative time of these transactions. J. S. Faulknor agreed to do certain work for the defendants, January 31, 1887. Under that agreement he worked for defendants from January 31, 1887, to May 2, 1887. He made an agreement with plaintiff, his mother, that she should have the earnings under this contract with defendant. This agreement was made February 1, 1887. The defendants had notice of this last agreement only by the commencement of this action, January, 1888. On the part of the defendants the facts are: J. S. Faulknor became indebted to defendant Swart as indorser duly charged, May 13, 1886. Swart assigned to the two other defendants two-thirds of his claim against J. S. Faulknor, August 17, 1887. On these facts the question is whether the counter-claim is good. The referee held it was not and the defendants appeal.

*S. W. Jackson*, for the appellants.

*N. C. Moak*, for the respondent.

LEARNED, P. J.:

The agreement made by J. S. Faulknor with the plaintiff did not operate at once as an assignment of indebtedness thereafter to arise. But it was an equitable assignment which a court would enforce as acting upon the indebtedness as it arose from time to time. (*Field* v. *Mayor*, 6 N. Y., 187; *McLachlin* v. *Brett*, 105 id., 396.) We cannot say, then, that the defendants never owed J. S. Faulknor, but at once owed the plaintiff for whatever Faulknor did. To say this would be to give a legal, and not an equitable, effect to the agreement made with the plaintiff by him. We must treat the matter as if J. S. Faulknor assigned to plaintiff the indebtedness of

defendant after, and as soon as, it accrued. The defendants had contracted with J. S. Faulknor and they could not be deprived of the terms of their contract. The plaintiff must take as an assignee of indebtedness which had previously been payable to J. S. Faulknor; that is, as an assignee of various dates, if the money was to be paid from time to time. If the money was to be paid at the end of the work, then the plaintiff must be considered as an assignee of the date of May 2, 1887.

Now, let us suppose for a moment that J. S. Faulknor had not assigned the claim, and that in January, 1888 (the time when this action was commenced), he had sued these defendants. Can there be any doubt that they could then have maintained this counter-claim under section 501, subdivision 2. In that state of affairs these defendants would have been owing J. S. Faulknor for his services, and he would have been owing them on the indorsement of the note, which at the commencement of the action would have belonged to all the defendants.

Then, how are the rights of the parties affected by Faulknor's assignment to the plaintiff, taking effect (say) May 2, 1887. Section 502, subdivision 1, provides for this case. It says that a demand existing against the original party to the plaintiff's assigned cause of action (in this case against J. S. Faulknor) at the time of the assignment (in this case May 2, 1887, and the liability on the indorsement did then exist) and belonging to the defendant in good faith before notice of the assignment (and this demand belonged to the defendants August 27, 1887, before notice of the assignment, January, 1888), must be allowed as a counter-claim, if it might have been allowed against the original party (J. S. Faulknor,) while the contract belonged to him. This last clause refers to the nature and validity of the demand, and not to its ownership by the defendant before the assignment of plaintiff's claim. Because the previous clause provides that it need belong to defendant in good faith *only before notice* of the assignment of plaintiff's claim.

That this is the correct meaning appears by section 1909. This provides that the transfer of a demand passes an interest which the transferree may enforce as the transferror might have done, subject to any counter-claim existing against the transferror before notice of the transfer. The liability on the indorsement existed and was in

the ownership of defendants against J. S. Faulknor, the transferror, before notice of the transfer.

We think the language of the Code is plain on this point. And it is consistent with good sense. If an assignee of a claim desires to protect himself against the purchase by the debtor of claims against the assignor, he has only to give notice of the assignment to the debtor. If he neglects to do this, then it is reasonable to permit the debtor to purchase in good faith any valid claim against his original creditor and to use it as a counter-claim when sued. The debtor acts in good faith, supposing, in the want of notice to the contrary, that he still owes the original creditor. And against such creditor it is reasonable to make him pay his own debts when he is trying to collect a debt from others.

We have taken the facts in the way most favorable to the plaintiff. The testimony of J. S. Faulknor, relied on to show an assignment to plaintiff, is very questionable, and, taken in connection with the original complaint, in which the plaintiff swore to an assignment made to her December 12, 1887, the referee might well have doubted that the alleged agreement of February 1, 1887, was ever made.

Judgment reversed, new trial granted, referee discharged, costs to abide event.

LANDON and FISH, JJ., concurred.

Judgment reversed, referee discharged, new trial granted, costs to abide event.