SPICER *et al. v.* SNYDER.

(*Supreme Court, General Term, Third Department.* November 26, 1890.)

1. ASSIGNMENT—EFFECT—RIGHTS OF ASSIGNEE.
A firm of house builders, known to be insolvent, agreed to build a house for defendant, and to furnish the labor and material. Immediately thereafter they assigned to plaintiffs the moneys to become due under the agreement as security for lumber furnished for the house and for a prior indebtedness, of which assignment defendant had notice. The contractors not paying their men, defendant promised to pay them. *Held*, that the assignment to plaintiff was merely equitable, and operated only upon the indebtedness as it accrued from time to time; that money paid by defendant to material-men and mechanics satisfied the contract to that extent; and that, if plaintiffs were paid for the lumber, they had no cause to complain of the payments made to the others.

2. SAME—PARTNERSHIP.
An assignment by a firm of money to become due under a building contract will not embrace money due an individual member of the firm who completes the contract after the dissolution of the firm leaving the building unfinished.

Appeal from judgment entered upon the report of a referee.

Action by John D. Spicer and Henry R. Thomas against Edward Snyder to recover of defendant moneys alleged to have become due to plaintiffs, as assignees of Quimby & Vandenburgh, upon their contract with defendant to build a house. Quinby and Vandenburgh were partners as house builders. On the 12th day of February, 1884, they made a contract in writing with the defendant, whereby they agreed to build for him a two-story frame dwelling-house upon his lot, and furnish all the materials, according to the plans and specifications, for $4,393, 75 per cent. of which the defendant agreed to pay from time to time as the work progressed, and the balance when completed, the building to be completed May 1, 1884. Quinby & Vandenburgh were insolvent, and known to be so by the defendant. At the time of making said contract Quinby & Vandenburgh told the defendant that they had no money or means to carry it out, and that the defendant would have to advance the money as needed to pay for the work and materials put into the building, and the defendant assented thereto. The plaintiffs were lumber dealers in the city of Troy. They knew the insolvency of Quinby & Vandenburgh, and were their creditors at the date of the contract with defendant in the sum of $489.53 for lumber which they had furnished them for a house which they were then building for one Edmans, and they continued thereafter to furnish them lumber for the Edmans house until the total indebtedness of Quinby & Vandenburgh to the plaintiffs for such lumber was $1,086.84. Vandenburgh was also at the same time indebted to the plaintiffs for lumber in the sum of $215.31. On the 4th of March, 1884, Quinby & Vandenburgh gave the plaintiffs the following assignment: "For value received, we hereby sell, assign, and transfer to J. D. Spicer & Co., of Troy, N. Y., all moneys now due or hereafter to become due upon the annexed contract with Edward Snyder, and hereby authorize said John D. Spicer & Co. to collect the same in our name or otherwise. This assignment is given as, collateral security to said John D. Spicer & Co. to secure them the payment of all moneys now due or hereafter to become due to said J. D. Spicer & Co. from us or either of us." On the same day the plaintiffs gave the defendant notice that they held such an assignment. Quinby & Vandenburgh commenced the construction of defendant's house. On April 1, 1884, their firm was dissolved, Quinby withdrawing. Thereafter Vandenburgh carried on the work alone. The plaintiffs furnished Quinby & Vandenburgh, and, after the dissolution of the firm, Vandenburgh, lumber for the defendant's house, which was used in its construction, of the value of $1,390.93. The defendant paid plaintiff $1,018.25 thereon; $372.68 remains unpaid. Quinby & Vandenburgh, and, after their separation, Vandenburgh, employed subcontractors, masons, carpenters, and workmen, and contracted for materials to complete the defendant's house.

After the work had so far progressed that, including the lumber furnished by plaintiffs, $2,700 had become due from defendant thereon, the masons, carpenters, and other workmen stopped work, because Vandenburgh did not pay them. They refused to work unless the defendant would agree to pay them. The defendant, in order to procure them to finish the house, promised to pay them for what they had done and should thereafter do. Both Quinby & Vandenburgh and Vandenburgh individually omitted to pay for a considerable part of the materials furnished, and liens to the amount of several hundred dollars were filed against the house. The defendant paid for the said work and materials, over and above his payments to plaintiffs, $2,343. The said labor and materials thus paid for were necessary in the building of the house, and the payments were made with the consent of Vandenburgh. The contract required the contractors to paint the house inside and out with three coats of good white lead and oil paint. The house was painted, but not according to the contract.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

J. A. Cipperly, for appellant.   R. A. Parmenter, for respondents.

LANDON, J.   The judgment can be upheld only in part. The contractors were insolvent, and could not build the house except upon the credit of their agreement with the defendant. Before they became entitled to anything under the agreement they assigned whatever moneys should become due to them upon it to the plaintiffs, as collateral security not only for the lumber plaintiffs might put into defendant's house, but for all other indebtedness the insolvent contractors, either as a firm or individually, did or should owe them. The plaintiffs, having given notice to defendant of the assignment, claim that the defendant could not apply the money which he was to pay the contractors for building the house in payment of the bills which the contractors had incurred for the labor and materials put into the house, although the contractors consented; and, because he did so pay, he must pay so much of the amount over again to them as may be necessary to pay the old debts due them from the contractors. The referee sustained this claim. The assignment to the plaintiffs was of "all moneys now due or hereafter to become due upon the annexed contract with Edward Snyder." By the annexed contract the contractors agreed to build a house, furnishing all labor and materials, for $4,393, which the defendant agreed to pay. That contract was based upon the contemporaneous understanding that the contractors had neither credit nor means to carry it out, and the oral agreement that the defendant would advance the money as needed to pay for the work and materials put into the building. The written contract was executory, and the parties to it had the right to execute it according to their contemporaneous oral understanding and agreement. The plaintiffs, as assignees, stood in no better condition than their assignors, and they could not prevent the parties to it from carrying it out according to such understanding and oral agreement. They had no standing to urge that the oral understanding and agreement were merged in the written instrument. Nothing could become due to the contractors under the agreement except upon the execution of it, and the execution of it was in no way under plaintiffs' control. The plaintiffs did not become parties to the building contract; they could not enforce its performance, or recover damages for its non-performance. The assignment to the plaintiffs of moneys "hereafter to become due" did not operate at once as an assignment of such moneys. It was merely an equitable assignment, operating upon the indebtedness as it arose from time to time. Faulkner v. Swart, 8 N. Y. Supp. 239. Equity will not enforce it to the denial of the right of the parties to the building contract to pay to whom due the price of the labor and materials put into the building. To permit such payment equity will limit the contractor's interest to his profits. Rodbourn v. Wine Co., 67 N. Y. 217.

Such being the situation, the oral agreement of the defendant to advance the money as needed to pay for the work and materials put into the building left it to the parties to determine when such advance was needed, and to what mechanics and material-men it should be paid. Clearly it was needed when due to the mechanics and material-men; and it was proper for the defendant in such case to pay them, the contractor either assenting or not dissenting. All the moneys thus paid by the defendant satisfied to that extent the contract price. There are unpaid bills for labor and materials which entered into the construction of the house, which we think the defendant may safely pay upon the contract price. It was clearly the understanding of the defendant and the contractors that all labor and materials should be paid for to the extent at least of the contract price, and, if the plaintiffs are paid for the lumber they put into the house, they will have no equity to complain of the honesty which refuses to rob third parties to pay Quinby & Vandenburgh's old debts. There is another defense. The assignment to plaintiffs was of the moneys thereafter to become due to the firm of Quinby & Vandenburgh. At the date of the assignment, March 4, 1884, it does not appear that any moneys were due to Quinby & Vandenburgh upon the contract. On the 1st of April, 1884, the firm of Quinby & Vandenburgh was dissolved, and thereafter Quinby did no further work upon the contract. At the date of the dissolution of the firm the building was under construction. It does not appear what sum, if any, was then due the firm upon the contract. The defendant subsequently paid the plaintiffs $1,018.25 upon account of the lumber they furnished for the building, and there is no doubt that that sum was more than the amount due Quinby & Vandenburgh at the date of the dissolution of the firm. After the dissolution the work upon the building was continued by Vandenburgh, and of course whatever moneys became due upon account thereof did not become due to Quinby & Vandenburgh, and therefore were not embraced within the terms of their assignment to the plaintiffs. The defendant requested the referee to find that Quinby & Vandenburgh "have never caused the house to be painted according to or as required by the terms and conditions of the said contract, and by specifications therefor." To which the referee responded: "I so find. There was a substantial performance." It is plain that here is an open question between the contractor and the defendant, one that must be adjusted before it can be determined whether the final payments are due upon the contract. The referee's finding is explicit that this work was not done according to the terms of the contract; and, in view of that finding, what is meant by the further finding, that there was a substantial performance, it is difficult to state. A substantial performance, to be effective, is a performance substantially as the contract requires. A substantial performance according to some other method cannot be allowed. *Glacius* v. *Black*, 50 N. Y. 145. If the recovery had been limited to the balance due the plaintiffs upon the lumber they furnished for defendant's house, it would have been for what the plaintiffs ought to receive, and which the defendant doubtless can pay within the contract price. Substantial justice seems to require such a judgment, despite technical obstacles. The judgment is reversed, referee discharged, new trial granted, costs to abide the event, unless the plaintiffs will stipulate within 20 days after notice of this order to reduce their judgment to $372.68, with interest thereon, and costs as in the original judgment, in which case the judgment is so modified, and, as modified, affirmed, without costs. All concur.