THOMAS COGAN et al.

*v.*

CONOVER MANUFACTURING COMPANY.

[Decided March 3d, 1905.]

1. In the absence of authority from the directors, the president of a corporation is without power to assign, pledge or dispose of the company's property.

2. Where a resolution of directors of a corporation authorized the president to borrow moneys, the same to be returned to the lender "out of the first collections following such loans," the president has no authority to make an equitable assignment to the lender of certain money to be earned in the future by the corporation under a contract.

3. On an equitable assignment of money to be earned in the future by the assignor, the assignee acquires no lien on the money unless the assignor has earned it.

4. Where a corporation made an equitable assignment of moneys to be earned by it in the future under a contract to manufacture certain machinery, and the corporation was declared insolvent, an injunction

issued and a receiver was appointed before the moneys had been earned, and the receiver, without notice of such assignment, completed the machinery and delivered it to the purchaser, the equitable assignee is estopped to claim a preference.

5. Though the statute gives the employes of an insolvent corporation a first lien for wages, if an employe assigns his claim before insolvency is decreed, his assignee acquires no lien.

These are appeals by certain creditors from the adjudication of the receiver of the defendant company upon their claims.

The main case was an action under the Corporation act for an injunction and a receiver upon the ground of the defendant's insolvency.

The Greenville Banking and Trust Company, the Greenville Coal and Ice Company and Thomas Cogan each filed claims asserting preference with respect to certain moneys, which claims for preference the receiver in each instance disallowed.

Each of the claimants has appealed to this court, and, after order of reference, a hearing was accorded each.

The appeals were heard upon the testimony taken before the receiver.

The receiver was appointed on the 1st day of August, 1904.

The Conover Manufacturing Company was engaged in the business of manufacturing condensers and other machines at Greenville, in Jersey City.

About July, 1903, the Conover company contracted to build six condensers for the Public Service Corporation.

Prior to January 1st, 1904, the company had completed these machines and had delivered all but two of them.

Upon those two there was due the sum of $6,300.

Of this $6,300 the Public Service Corporation had. prior to the appointment of the receiver, paid all excepting $2,100. This sum of money is one of those in controversy.

The Conover company, by an exchange of letters, the final one being dated April 18th, 1904, agreed to manufacture two No. 29 condensers for the Public Service Corporation for the total sum of $16,500, of which one-half was to be paid on bill of lading, or when condensers were ready to be shipped, thirty per cent. in

thirty days thereafter, and the final payment on erection and test.

At the time of the appointment of the receiver some work had been done upon these two No. 29 condensers.

On the 1st of August, 1904, the receiver obtained an order from this court permitting him to issue receiver's certificates for a sum not exceeding $5,000.

The receiver obtained money upon these certificates and completed the machines and delivered them to the Public Service Corporation.

Under an order, dated the 13th day of October, 1904, the receiver collected from the Public Service Corporation the $2,100 balance due on the first order, and the $8,250, the first payment due under the second order, and holds the same pending the determination of this matter, when distribution is to be made in accordance with the order of this court.

The three claimants above named assert their preference against these sums of money.

The appeals will be taken up separately, and the particular facts of each, so far as they are necessary to be considered, will be detailed in their proper connection.

### CLAIM OF GREENVILLE BANKING AND TRUST COMPANY.

*Messrs. Collins & Corbin,* for Greenville Banking and Trust Company.

*Mr. J. Merrill Lane,* for the receiver.

GARRISON, V. C.

The trust company claims preference with respect to two several sums of money, one of $2,100 and the other of $8,250.

It claims, in each instance, to have an assignment from the Conover Manufacturing Company.

With respect to the $2,100 item it produces writings as follows:

"We hereby assign to the Greenville Banking and Trust Company, as collateral security, the sum of ten thousand dollars, out of our order for six condensers for the North Jersey Street Railway Company of Newark, N. J., through the Brown Engine Co., of Corliss, Wis., amounting to $25,200.

"Our terms of payment are one-half on delivery and balance on sixty days thereafter.

"We hereby agree to collect the above money, acting as agent of the Greenville Banking and Trust Company, and immediately on receipt of same to turn over to them such proportion of amount collected as the above assignment of $10,000 is in proportion to $25,200, the total amount of the order.

"Jersey City, N. J., Mar. 30, 1903.

"The Conover M'f'g Co.,<br>"E. K. Conover, <i>Prest.</i>"

"January 5th, 1904.

"In accordance with a resolution passed by the board of directors at a meeting held this date, we hereby assign to the Greenville Banking and Trust Company, as collateral security, the sum of thirty-seven hundred and eighty dollars ($3,780), out of an order from the Public Service Corporation of New Jersey.

"We agree to act as the agent of said Greenville Banking and Trust Company in collecting this money, and agree to turn it over to them immediately on receipt of same, in such sums as it may be received.

"This $3,780 is the balance remaining of our final payment of $6,300, after deducting $2,520 which has already been assigned to said Greenville Banking and Trust Company.

"Very truly yours,<br>"The Conover M'f'g Co.,<br>"E. K. Conover, <i>Prest.</i>"

"January 1st, 1904.

"Sold to Public Service Corporation of N. J.

"Terms: Net. Newark, N. J.

"To balance due on Condenser No. 5, shipped October 12/03 ................................ $2,100

Condenser No. 6, held in our shop for shipping instructions ................................ 4,200
    ——— $6,300

"January 7th, 1904.

"For value received, we hereby assign to the Greenville Banking and Trust Company the above account.

"The Conover M'f'g Co.,<br>"E. K. Conover, <i>Prest.</i>"

The minutes of the directors of the Conover company with respect to the matter are as follows: ·

"MEETING OF DIRECTORS, July 20th, 1903, page 72.

"The following resolution was offered by Mr. Holmes:

"*Resolved*, That the directors of the company hereby ratify the action of the president in making an assignment to the Greenville Banking and Trust Co. of part of the account for Newark Condenser, which assignment reads as follows:

"March 30th, 1903. We hereby assign to the Greenville Banking and Trust Co., as collateral security, the sum of $10,000 out of our order from the North Jersey Street Railway Co., through the Brown Corliss Engine Co., amounting to $25,200.

"Terms are one-half on delivery and balance in sixty days.

"We also agree to act as their agent in collecting this money and agree to turn over to them immediately upon receipt of same, in the proportion as $10,000 bears to $25,200, the total amount of contract.

"The above resolution was seconded by Mr. Cogan and unanimously carried."

"MEETING OF DIRECTORS, January 5th, 1904, page 77.

"The following resolution was offered by Mr. Cogan and seconded by Mr. Holmes:

"*Resolved*, That we hereby assign to the Greenville Banking and Trust Company, as collateral security, the sum of thirty-seven hundred and eighty dollars ($3,780), out of an order from the Public Service Corporation of New Jersey. We agree to act as the agent of said Greenville Banking and Trust Company in collecting this money and agree to turn it over to them immediately on receipt of same in such sums as it may be received. This $3,780 is the balance remaining of our final payment of $6,300, after deducting $2,520 which has already been assigned to said Greenville Banking and Trust Company.

"Also, a copy of this assignment and a copy of this resolution be given to the bank."

The only one of these writings which is a clear, absolute assignment is that dated January 7th, 1904, written upon the bill dated January 1st, 1904, and this assignment lacks any authorization by the directors of the Conover company.

The action of the directors, as shown by the minutes quoted above, was correctly set forth in the paper dated January 5th, 1904.

There is no evidence whatever to show any power lodged in the president of the Conover company to make any such assignment as the one he did make under date of January 7th, 1904.

Without such authority lodged in him by the directors a president of a corporation is without power to make any such assignment, pledge or disposition of the company's property. *Stokes* v. *New Jersey Pottery Co., 46 N. J. Law (17 Vr.) 237 (Supreme Court, 1884)* ; *Raub* v. *Blairstown Creamery Association, 56 N. J. Law (27 Vr.) 262 (Supreme Court, 1893)* ; *Bennett* v. *Keen, 59 N. J. Eq. (14 Dick.) 634 (Court of Errors and Appeals, 1899)*.

The reason the president of the Conover company, after having given to the trust company a writing exactly in accordance with the resolution of the directors (which is the paper dated January 5th, 1904), subsequently gave the absolute assignment, dated January 7th, 1904, is explained by both the president of the trust company and the president of the Conover company.

Their explanation is that, since under the writing of January 5th the money from the Public Service Corporation was to be collected by the Conover company and not by the trust company, and since the trust company desired to have it so that it could itself collect the money, the president of the Conover company made and delivered the paper of January 7th, 1904.

The only contract between the two companies, as has been before pointed out, is that evidenced by the writing of January 5th, 1904, and the rights of the trust company must be determined with respect to that paper, since they must rest upon it.

The subject-matter being a portion of money to be earned in the future by the assignor, the assignment is an equitable one and must be ruled by the principles applicable to such assignments.

It has been held that equity disregards form and searches for intention with respect to equitable assignments. *Bower* v. *Hadden Blue Stone Co., 30 N. J. Eq. (3 Stew.) 171 (Vice-Chancellor Van Fleet, 1878)* ; *affirmed, sub nom. Lyon* v. *Bower, 30 N. J. Eq. (3 Stew.) 340; Shannon* v. *Mayor of Hoboken, 37 N. J. Eq. (10 Stew.) 123 (Vice-Chancellor Van Fleet, 1883)* ; *affirmed, 37 N. J. Eq. (10 Stew.) 318; Seyfried* v. *Stoll, 56 N. J. Eq. (11 Dick.) 187* (at *p. 189*) *(Vice-Chancellor Emery, 1897)* ; *Weaver* v. *Atlantic Roofing Co., 57 N. J. Eq. (12 Dick.) 547 (Vice-Chancellor Grey, 1898)*.

The first source from which to gather the intention of the parties to this instrument is, of course, the instrument itself.

This instrument (dated January 5th, 1904) exactly conforms to the language of the resolution adopted by the directors who authorized its execution.

The first paragraph of this writing is undoubtedly a clear assignment of the sum of $3,780 out of the money to become due from the Public Service Corporation when the Conover company should have filled its order.

The second paragraph reflects seriously upon the effect of the first paragraph.

By this second paragraph the Conover company still retains the right to collect the money, and agrees, when it shall have collected it, to turn it over in such sums as it may receive it.

The distinction between an equitable assignment of a sum of money which is effective and an agreement to pay out of a particular fund which is ineffective as an assignment has been variously expressed, but of course always to the same common intent.

The supreme court of the United States, in the case of *Christmas* v. *Russell, 14 Wall. 69,* said: "An agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment; a covenant in the most solemn form has no greater effect.  *  *  *  The assignor must not retain any control over the fund, any authority to collect or any power of revocation. If he do, it is fatal to the claim of the assignee. The transfer must be of such a character that the fund-holder can safely pay, and is compellable to do so, though forbidden by the assignor." Citing cases. *Trist* v. *Child, 21 Wall. 441.*

In the case of the *American Pin Co.* v. *Wright, 60 N. J. Eq. (15 Dick.) 150,* Vice-Chancellor Pitney said: "The distinction, when dealing with pure personalty, is between a promise to pay out of the fund after it comes to the hands of the promisor, and a direction to the present holder of the fund to pay it or a part of it to another person. The first is a mere promise; the latter is an assignment."

Applying these tests, I should have grave doubt in determin-

ing whether this should be held to be an equitable assignment, or only an agreement to pay out of a particular fund.

The strength of my doubt is increased by the testimony heretofore alluded to of the presidents of the two companies, which shows that, in their view, this paper left it with the Conover company to collect the money, and then, under its agreement, turn it over.

But by reason of a finding of fact next to be alluded to, I do not find it necessary to determine the question of law just suggested.

It appears from the proofs that on the 7th day of January, 1904, the $3,780 mentioned in the writing of January 5th, 1904, was borrowed by the Conover company from the trust company upon a note of the Conover company endorsed by itself and its president.

This note was No. 701. On April 6th, 1904, a note was given in renewal thereof, which was numbered 746. On July 6th, 1904, a note was given in renewal thereof, which was numbered 801. On July 12th, 1904, three of the directors of the Conover Manufacturing Company gave to the trust company their notes for $10,000, divided into three notes of $3,333.33 each.

These three notes were given to take up notes of the Conover company of various numbers, including No. 801.

Subsequently, it appears from the proofs, the directors paid these notes.

It seems to me, therefore, to be indisputable that the advance by the trust company which this writing was given to secure has been paid, and hence the trust company has no claim under this writing against the Conover company or its receiver.

The only suggestion made by the counsel for the trust company against the effect of the obvious facts was that the writing of January 5th did not specifically mention the note given, or to be given, for the loan of that money, and that, therefore, the trust company had a right to hold it as general collateral security for any sums due by the Conover company to the trust company.

I do not think that this is an answer, or that any contention based thereon can be sustained.

It is perfectly clear, from all of the proofs, that what took place was this:

On the 30th of March, 1903, the Conover company was indebted in a large sum of money to the trust company.

On that date the president of the Conover company, without any authority, gave the paper-writing of that date heretofore quoted.

Subsequently, and on the 20th day of July, 1903, the directors of the Conover company ratified the action of the president in making this paper.

The Public Service Corporation had paid to the Conover company up to January 5th, 1904, $18,900 out of the $25,200, leaving a balance due from the Public Service Corporation of $6,300.

Of this $18,900, so received by the Conover company up to January 5th, 1904, it had paid to the trust company, under the agreement of March 30th, 1903, its proportion, amounting to $7,500.

Under the terms of the agreement of March 30th, 1903, the amount that would be payable to the trust company out of the $6,300 balance due from the Public Service Corporation would be $2,500.

The proportion, under the agreement of March 30th, 1903, was as $10,000 is to $25,200.

It is obvious that, in dealing with the situation at that time, the parties used the figures 2.52 and got it confused, so that instead of making the balance that would be payable to the trust company out of the $6,300, $2,500 as it should have been, they made it $2,520.

From these figures it is clear that when the parties, on the 5th of January, 1904, came to deal with the matter, they figured that out of the $6,300 still due from the Public Service Corporation $2,520 would be payable to the trust company under the agreement of March 30th, 1903, and the balance would be retained by the Conover company, that balance being $3,780.

The parties thereupon agreed that if the trust company would advance this $3,780 to the Conover company the Conover company would give its note for this advance, and would, as col-

lateral security for the payment thereof, assign this sum out of the money due from the Public Service Corporation to the trust company.

Since under the terms of the agreement of March 30th, 1903, they figured that the trust company would receive $2,520 they provided by the resolution of January 5th, 1904, the transfer of the $3,780, making together the whole sum of $6,300 due from the Public Service Corporation.

As has already been pointed out, the note given by the Conover company to the trust company for this $3,780 was subsequently paid, so that the collateral security, as evidenced by the writing of January 5th, 1904, is of no avail to the trust company.

The trust company is therefore forced to fall back upon the agreement of March 30th, 1903.

. Of course, the same doubt exists as to whether this paper is an equitable assignment, or whether it is a mere agreement to pay out of a fund, as was expressed and discussed heretofore with respect to the writing of January 5th, 1904.

I do not find it necessary to decide this question because of my findings of fact as next stated.

At the time of the giving of the paper of March 30th, 1903, the Conover company was indebted to the trust company in a larger sum of money than the $10,000 mentioned in that paper.

By the terms of that paper the Conover company was to receive out of the $25,200 to be paid by the Public Service Corporation the sum of $10,000.

It is quite clear from the evidence that it has received much more than this sum.

From what has already been detailed of the facts, it is clear that on the 5th of January, 1904, the Public Service Corporation had paid all of the $25,200 excepting $6,300; it therefore had paid $18,900.

Of this $18,900 the trust company had received, in accordance with the proportions mentioned in the agreement of March 30th, 1903, $7,500, so that upon that date, namely, January 5th, 1904, it had received all except $2,500 of the $10,000 that it was agreed it should receive.

Since January 5th, 1904, the Public Service Corporation has paid all of the $6,300 except $2,100; therefore it has paid $4,200.

All of this $4,200 has been turned over by the Conover company, as it received it from the Public Service Corporation, to the trust company.

The trust company has therefore received, under the paper of March 30th, 1903, out of the $25,200 payable by the Public Service Corporation, $7,500 up to January 5th, 1904, plus $4,200 since received, or a total of $11,700.

If its insistment was allowed in this case, and it were paid this $2,100, it would have received $13,800, which, as will be observed, is the original $10,000 mentioned in the writing of March 30th, 1903, plus the $3,780 advanced and mentioned in the paper of January 5th, 1904. (The error of $20 arising by some mistake of calculation made at the time that the paper of January 5th, 1904, was written, as has been heretofore explained).

In view of these facts, I do not see in what aspect the trust company can claim anything under the paper dated March 30th, 1903.

These findings dispose of the claim of the trust company for preference with respect to the $2,100 item, and result in the dismissal of its appeal from the adjudication of the receiver, and a finding that the receiver's adjudication was correct, and I will so advise.

I will next deal with the claim for preference with respect to the $8,250.

The trust company bases its claim for preference with respect to this sum of money upon the following papers:

"APRIL 20TH, 1904.

"We hereby assign to the Greenville Banking and Trust Company the sum of eighty-two hundred and fifty dollars ($8,250.00), same being first payment, due on delivery, of one-half of contract price amounting to sixteen thousand five hundred dollars ($16,500.00) for two No. 29 Condensers for Public Service Corporation of New Jersey, ordered April 13th, 1904.

"We also agree to act as agent for said Greenville Banking and Trust Company in collecting above money, and agree to turn above-mentioned

eighty-two hundred and fifty dollars ($8,250.00) over to them immediately upon receipt of same from the Public Service Corporation of New Jersey.

> "THE CONOVER M'F'G CO.,
> "E. K. CONOVER, *Prest.*"

"APRIL 26TH, 1904.

"We hereby assign and transfer to the Greenville Banking and Trust Company the first payment of eight thousand two hundred and fifty dollars ($8,250) on contract with the Public Service Corporation of New Jersey, amounting to sixteen thousand five hundred dollars ($16,500), and we authorize the Public Service Corporation of New Jersey to make above payment, when due, direct to the Greenville Banking and Trust Co.

> "THE CONOVER M'F'G CO.,
> "E. K. CONOVER, *Prest.*"

The resolution of the directors with respect thereto is as follows:

"MEETING OF DIRECTORS, April 26th, 1904, page 80.

"The following resolution was offered by Mr. Cogan and seconded by Mr. Holmes:

"*Resolved,* That the board of directors of this company be and they are hereby authorized and empowered to proceed forthwith to secure a loan of five thousand four hundred and seventy dollars ($5,470) of the Greenville Banking and Trust Company, at a rate of interest not to exceed six per cent. per annum, and for such period as such directors may be able to arrange, and that such directors and the proper officers of the company make and give such proper promissory note or notes on the part of the company as may be required to secure payment of such loan, together with an assignment of such contract or contracts of this company as may be necessary to further secure such loan.

"Jersey City, N. J., April 26th, 1904.

> "THE CONOVER MANUFACTURING COMPANY,
> "E. K. CONOVER, *Prest.*
> "H. H. HOLMES, *Secty.*"

I think it doubtful whether a president, authorized to "assign contracts," has the power to assign money to come due to his corporation when and if it fulfills a contract.

The two things are radically different.

When one assigns a contract the assignee takes upon himself the burden of doing the work, supplying the materials and completing the contract.

When one assigns money to be earned by him under a contract he undertakes to do the work, supply the materials and

24

permit that part of the consideration which he has assigned to go to the assignee.

If there was no other evidence in the case excepting the assignment and the resolution, I seriously doubt whether a finding would be proper which held that the assignment was authorized by the resolution.

There are, however, other facts which I think make it clear that the directors intended by the language they used to authorize the president to do what he did, so far as the form of the assignment is concerned, but not what he did as to the amount, the question with respect to which will be dealt with later.

As the resolution shows, the directors desired to borrow $5,470 from the trust company and to give the Conover company's note therefor, and to secure the payment of the note by assigning to the trust company money to be earned by the Conover company by the filling of certain contracts. The Conover company certainly intended to do the work and, and when in the resolution they used the words "assign contracts" they must mean the consideration to be received under certain contracts.

The question whether one has made an equitable assignment, as has been heretofore shown, is to be determined by the intention proven, and I think it sufficiently appears that with respect to this matter the directors intended to assign the money to be earned under the contracts.

I do not find, however, any warrant for the assignment being for any greater sum than $5,470.

This is the amount which is set forth in the authorizing resolution and the amount of cash advanced at that time to the Conover company by the trust company, and the assignment must therefore be treated as if for that sum.

The trust company urges that since at the time it advanced this $5,470 its previous unsecured advances added thereto made a total exceeding $8,250, it has the right to hold the assignment for the full amount expressed therein.

I fail to find any good reason sustaining this contention.

Whether it might do so if the Conover company had authorized such an assignment is another and totally different question.

The questions discussed at the hearing before me concerning

the. insolvency of the company at the time and the validity of an assignment to secure past-due indebtedness under the circumstances claimed to exist in this case, would all arise if I should find that the Conover company had ever authorized this assignment for $8,250.

I do find that it authorized an assignment for $5,470, and that it is proper to treat this assignment for $8,250 as if it were for $5,470; and since this sum was, at the time of the assignment, advanced by the trust company to the Conover company, none of the other questions are present.

Under the cases heretofore cited it seems to me to be settled law that a president of a corporation may not bind the same by acts in excess of his authority, and it clearly appears in excess of his authority in this case to have given any assignment to the trust company for any greater sum than $5,470.

It is scarcely necessary to point out—but it is very important that it should be constantly borne in mind—that this is not an assignment of the contract existing between the Conover company and the Public Service Corporation. *Keefe* v. *Flynn, 116 Mass. 563.*

If it had been an assignment of the contract the questions raised would have been entirely different from those that must be determined in this case.

It is an equitable assignment of moneys to be earned in the future by the assignor if and when he carries out a contract with a third party.

Such assignments have been frequently dealt with in our courts, and in the following cases many of the principles applicable thereto are laid down: *Superintendent, &c.,* v. *Heath, 15 N. J. Eq.* (2 *McCart.*) *22* (*Chancellor Green, 1862*) ; *Bower* v. *Hadden Blue Stone Co., supra; Burnett* v. *Jersey City, 31 N. J. Eq..* (4 *Stew.*) *341* (*Court of Errors and Appeals, 1879*) ; *Terney* v. *Wilson, 45 N. J. Law* (16 *Vr.*) *282* (*Supreme Court, 1883*) ; *Shannon* v. *Mayor of Hoboken, supra; Kirtland* v. *Moore, 40 N. J. Eq.* (13 *Stew.*) *106* (*Vice-Chancellor Van Fleet, 1885*) ; *Brokaw* v. *Brokaw, 41 N. J. Eq.* (14 *Stew.*) *215* (*Vice-Chancellor Van Fleet, 1886*) ; *Brown* y. *Dunn, 50 N. J. Law* (21 *Vr.*) *111* (*Supreme Court, 1887*) ; *Bank* v. *Bayonne,*

*48 N. J. Eq. (3 Dick.) 246 (Vice-Chancellor Green, 1891);* affirmed, *48 N. J. Eq. (3 Dick.) 646; Lanigan v. Bradley & Currier Co., 50 N. J. Eq. (5 Dick.) 201 (Vice-Chancellor Pitney, 1892); Board of Education v. Duparquet, 50 N. J. Eq. (5 Dick.) 234 (Vice-Chancellor Pitney, 1892); Bernz v. Marcus Sayre Co., 52 N. J. Eq. (7 Dick.) 275 (Court of Errors and Appeals, 1894); Bradley-Currier Co. v. Bernz, 55 N. J. Eq. (10 Dick.) 10 (Chancellor McGill, 1896); Weaver v. Atlantic Roofing Co., 57 N. J. Eq. (12 Dick.) 547 (Vice-Chancellor Grey, 1898); Miller v. Stockton, 64 N. J. Law (35 Vr.) 614 (Court of Errors and Appeals, 1900).*

It will be observed that in every case in which the right of the assignee is upheld the money had been actually earned by the assignor and was due.

The following general principles are deduced from the cases:

In equity one may assign his right to that which is not yet in existence.

To the extent that the assignor ever obtains a right in the thing assigned his previous assignment is effective against him.

It is also effective against his creditors and his subsequent assignees and pledgees.

The English rule required notice to be given by the assignee to the third party, holding that personal property passes by delivery, and that when actual delivery is not possible, the nearest approach to it that is possible must be had.

When, therefore, the subject-matter of the assignment is money to be earned in the future by the assignor, it was held that the assignee, to perfect the transfer of it to himself, must notify the third party of the assignment.

This doctrine has been discarded in certain jurisdictions in this country, including New York and our own. *Luse's Executors v. Parke, 17 N. J. Eq. (2 C. E. Gr.) 415 (Chancellor Green, 1864); Terney v. Wilson, supra; Board of Education v. Duparquet, supra; Miller v. Stockton, supra; Muir v. Schenck, 3 Hill 228; McCorkle v. Hermann, 5 N. Y. Supp. 881; Kamena v. Huelbig, 23 N. J. Eq. (8 C. E. Gr.) 78; Williams v. Ingersoll, 89 N. Y. 508; Coates v. First National Bank of Emporia, 91 N. Y. 20; Fairbanks v. Sargent, 104 N. Y. 108;*

*Stevens* v. *Ogden, 130 N. Y. 182; Fortunato* v. *Patten, 147 N. Y. 277.*

Such an assignment does not change or affect the contractual relations between the assignor and the third party. *Bernz* v. *Marcus Sayre Co., supra.*

The latter is protected if, without notice, he pays the assignor; or if, with notice, he pays that one who, so far as he is charged with notice appears entitled to the money.

The equitable assignee, therefore, is secure in his right whenever the assignor has filled his contract with the third party; and the latter would owe the money to the assignor were it not for the assignment, and does, by virtue of the assignment, owe it to the assignee.

He is insecure until this happens; until that time he has only a contingency which is subject to all the risks which inhere in the situation.

It is extremely difficult, if not impossible, to sum up in a single definition the interest of an equitable assignee with respect to money to be earned by the assignor.

Courts sometimes describe the situation in terms of a trust, holding that the debtor is, with respect to the money earned by the assignor and which he has assigned, a trustee for the assignee, and that when the money has been earned the assignee may call him to account for it. *Bank* v. *Bayonne, supra.*

Again, it is described as a contract to give a lien, and is referred to as if it were itself a lien. *Bernz* v. *Marcus Sayre Co., supra; Central Trust Co.* v. *West India Improvement Co., 169 N. Y. 314* (at *p. 323*).

In my view the legal situation of the parties to an equitable assignment with respect to money to be earned in the future by the assignor is as follows:

The assignor has, by the assignment, divested himself of any right to demand and receive that portion of the money which he has assigned, and the assignee is vested with the right to demand and receive the money if it is ever earned by the assignor.

Although the courts do not require more than one contract it must, it seems to me, in the nature of things, be considered as if there were two contracts—one by which the assignor contracts

.that when the money is due him he will assign and transfer his right to it to the assignee; the other is the actual transfer of the thing when it is in existence.  *Otis* v. *Sill, 8 Barb. 102; Cooper* v. *Douglass, 44 Barb. 409; Faulkner* v. *Swart, 8 N. Y. Supp. 239; Tailby* v. *Official Receiver, 13 App. Cas. 523; 10 Eng. Rul. Cas. 445.*

I fail to see how, at law or in equity, there can, properly speaking, be said to be a lien upon something which is not in existence and which may never exist.

In equity there may be an agreement that there shall be a lien upon a thing if and when it exists, but that agreement is not itself a lien.

A lien, from the legal standpoint, embodies the idea of a tie or bond, and it necessarily implies that there is something in existence to which it attaches—to which it is tied or bound.

If I am correct in my conclusion as to the nature of the interest of the equitable assignee, it follows that he has no lien unless and until the assignor has earned the money under the contract with the third party.

If the subject-matter of ·the assignment be left within the power and under the control of the assignor, the risk of its being impaired or destroyed is assumed by the assignee.  *James* v. *Railroad Company, 2 Disn. (O.) 261.*

If, after the assignment, the assignor, in the course of his dealings with the other contracting party, does that which disentitles him to the money, the effect is that the assignee takes nothing under his assignment.  *Bradley-Currier Co.* v. *Bernz, 55 N. J. Eq. (10 Dick.) 10 (Chancellor McGill, 1896)* ; *Cooper* v. *Douglass, supra; McCubbin* v. *City of Atchison, 12 Kan. 166 (1873)* ;. *Faulkner* v. *Swart, supra; Spicer* v. *Snyder, 12 N. Y. Supp. 744 (1890)* ; *Conselyea* v. *Blanchard, 103 N. Y. 222; Mechanics and Traders National Bank* v. *Winant, 123 N. Y. 265; Holmes* v. *Evans, 129 N. Y. 140.*

If the assignor fails to carry out his part of the contract with the other contracting party the rights of the assignee must necessarily fail.

In the suit in hand the Conover company was enjoined by this court from the further carrying on of its business, and hence it

never did fill its contract with the Public Service Corporation, and therefore the trust company, as assignee of money to be earned by the Conover company by that contract, can take nothing by virtue of its assignment.

The trust company, however, claims that it is entitled to preference on the ground that its assignment is good, and that the adjudication of insolvency against the company, the injunction against the same and the appointment of the receiver, do not affect its rights.

It will, therefore, be necessary to consider the effect of the proceedings in insolvency and the position of the receiver thereunder as applied to this case.

The history of that portion of our present Corporation act, which vests jurisdiction in the court of chancery and which provides for the issuance of an injunction and the appointment of a receiver of a corporation found to be insolvent, is traced and set forth in the clear and thoughtful opinion of Vice-Chancellor Stevenson in *Gallagher* v. *The Asphalt Co. of America, 65 N. J. Eq. (20 Dick.) 258 (1903).*

As he shows therein, this legislative scheme amounts practically to an equitable *quo warranto.*

The idea embodied in the New York legislation, from which ours was copied, was to vest in the court power to stop the further operations of insolvent corporations at the instance of the attorney-general.

Our act, copied almost literally from the New York act, preserving all the features of it, changed the applicant from the attorney-general to any stockholder or any creditor.

It did not, however, it seems to me, in anywise change the legislative purpose as disclosed in the act.

It is in no sense a creditor's bill, and to but a very limited extent is it an action *inter partes.*

Its primary purpose is to enable the court, upon a proper case shown, to forbid the further prosecution of business by an insolvent corporation.

It vests power in the court of chancery with respect to corporations which the court did not theretofore have, and which could only proceed from a legislative grant, it not being among

the inherent prerogatives or powers of the court. *Decker* v. *Gardner, 124 N. Y. 334.*

It vested the court, after it had stopped the operations of the corporation by means of an injunction, with power to name an officer whose duties, rights and powers are defined by the legislature.

This officer, namely, a receiver, is vested by our present Corporation act with title to all of the real and personal property of the corporation, and all of its franchises, rights, privileges and effects. *P. L. 1896 p. 299 § 68.*

The act provides that, with respect to the distribution of the assets in the hands of the receiver "after payment of all allowances, expenses and costs, and the satisfaction of all special and general liens upon the funds of the corporation to the extent of their lawful priority, the creditors shall be paid proportionally to the amount of their respective debts, excepting mortgage and judgment creditors, when the judgment has not been by confession for the purpose of preferring creditors." *P. L. 1896 p. 304 § 86.*

One of the insistments of the trust company is that, by virtue of the assignment being dealt with, it was vested with a lien upon funds of the corporation, and that it is entitled to preference with respect thereto, and such rights are enforceable against the receiver.

This insistment is based upon a theory with respect to equitable assignments which I have heretofore discussed and which I discard.

I do not think that by virtue of such an assignment there is constituted a lien. The utmost that can be said is that there is an agreement to give a lien.

If at the time when the money is earned the assignor could not give a lien, the assignee cannot have one.

If at the time the money is earned the assignor would not be entitled to it were it not for the assignment, the assignee is not entitled to it.

I conclude, therefore, that since this money had not been earned by the Conover company at the time this corporation was

adjudged insolvent and placed in the hands of the receiver, there was no lien in favor of the trust company.

The next insistment of the trust company is that since the receiver completed the machines specified in the contract between the Conover company and the Public Service Corporation, and earned the money due from the Public Service Corporation therefor, the right of the trust company with respect to the assignment is just as it would have been if the Conover company had completed the machines.

In endeavoring to arrive at a proper legal conception of the position of a receiver under our present Corporation act, the study of the opinions of the courts dealing with receivers is not particularly helpful, and must be in any event attended with great discrimination and care. I say it is not particularly helpful because the existing legislation is of recent enactment and has not as yet received much, if any, consideration at the hands of our courts.

It is also true that, by reason of the different kind and character of receiverships, much that our own court has said concerning this subject, and almost all that is said by courts of other jurisdictions, does not apply to the character of receiver with which we are dealing.

A receiver, considered as an arm of the court—usually termed an equitable receiver—is a mere custodian without title and without any power saving that conferred upon him by the order appointing him.

Decisions dealing with the acts and presumptions arising from the acts of such a receiver are not applicable, in my view, to a statutory receiver.

A receiver under our Corporation act is a statutory receiver. He is the legislative agency to be named by the court and to have such powers as the legislature has vested in him. He is a separate entity.

The act provides that after he has done those things which the legislature prescribes that he shall do, he shall hold and distribute the money under the order of the court of chancery and as it directs.

It seems to me quite clear that after the court has exercised the power vested in it, and has decreed that the corporation shall stop all activity and do no more business and exercise none of its franchises, and has followed that by naming a receiver in whom, by the operation of the statute, all of the property, franchises and effects of the corporation are vested, it cannot be said that the corporation continues, or that any act done by the receiver is as if done by the corporation.

I think it more reasonable to hold that the assets, when they come to the hands of the receiver by virtue of the statute, are burdened, as the act says they shall be, by general and special liens and by *bona fide* judgments and mortgages. To hold that they are burdened by any other obligations than those which the statute mentions, would be, as I think, to defeat the very purpose of the proceeding.

The purpose is to have that corporation wound up and its assets distributed to those entitled to them.

The priorities existing at the time of the receiver's appointment are to continue as against the assets in his hands, but no new priorities are to be created by reason of anything that he does; nor are his actions to be construed as if they were the actions of the corporation.

It is of course true, and does not militate against the suggestions I am making, that a receiver has the right, in the exercise of the powers vested in him, to do what the corporation might have done in the way of collecting unpaid subscriptions, debts due the corporation, and in many other ways to enforce its obligations.

It is likewise true that, with respect to the property held by him, he must respond to taxing authorities as the corporation would have been required to respond.

But with respect to creditors against the funds in his hands, I think that their rights are fixed as of the time of his appointment, and that those who had priorities then must be first paid and the others must be paid equally. *Linn* v. *Dixon Crucible Co., 59 N. J. Law (30 Vr.) 33 (Supreme Court, 1896)* ; *Crews* v. *United States Car Co., 57 N. J. Eq. (12 Dick.) 357 (Chancellor McGill, 1898)* ; *60 N. J. Eq. (15 Dick.) 516 (Court of*

*Errors and Appeals, 1900*); *Hollins* v. *Brierfield Co., 150 U. S. 371.*

While the court of errors and appeals in the *United States Car Company Case* reversed the chancellor, its opinion does not, I think, militate at all against the view I am expressing, because it held that since the act vested the thing the state taxed in the receiver, he must, while he had possession of that thing, pay the tax. This is consistent with and not opposed to the view I hold.

And with respect to the assets vested in him by the statute, I am of opinion that, subject to the qualifications just mentioned, the receiver takes such assets free from other obligations.

I mean by this that he has the right (subject always, of course, to honesty and good faith) to sell the assets as they are; to make up that which has not been made up and then sell; and in a great variety of ways to deal with the assets practically as if they were free from any obligation, subject, of course, to the disposition of the proceeds therefrom in accordance with the terms of the act, under the direction of the court.

To hold otherwise, and to insist that a receiver is continuing the corporation, and is in effect the corporation, is practically to dispense with any beneficial effect of the very proceeding in which he was appointed.

If after the assets have passed to his hands he must deal with them exactly as the corporation would have been required to deal with them, the effect would be to defeat the very legislative purpose which provided that there should be a receiver.

Those things which the receiver does with respect to the assets of the company, and those acts of his which are held to amount to contracts, seem to me to be his individual acts and contracts, and are not properly to be construed as acts and contracts of the insolvent corporation.

I am of opinion, therefore, that when the receiver in this case completed the machines in question and delivered them to the Public Service Corporation, the contract was his own contract and must not be held to be the contract of the corporation.

But it is not necessary to go to this extent in order to find the invalidity of the claim for preference on behalf of the trust company now being dealt with.

With respect to those receivers who are merely the arms of the court, it has been held that contracts of the corporation which they adopt are binding upon them and must be conformed to in their exact terms.

The cases hold that when a receiver is appointed (I am not now differentiating between different kinds of receivers), and he finds contracts of the insolvent corporation, he has an election to carry out or not to carry out such contracts. *Suydam* v. *Receivers of Bank, 3 N. J. Eq. (2 Gr.) 114 (Chancellor Vroom, 1834)*; *Bolles* v. *Crescent Drug and Chemical Co., 53 N. J. Eq. (8 Dick.) 614* (at *p. 618 et seq.*) (*Vice-Chancellor Reed, 1895*); *United Electric Sec. Co.* v. *Louisiana Electric Light Co., 71 Fed. Rep. 615; affirmed, 74 Fed. Rep. 664; Sunflower Oil Co.* v. *Wilson, 142 U. S. 313; 35 L. Ed. 1025; Ames* v. *Union Pacific Railroad Co., 60 Fed. Rep. 966; In re Seattle Railway Co., 61 Fed. Rep. 541; Hyde* v. *Lynde, 4 N. Y. 387; Kansas Pacific Railway Co.* v. *Bayles, 19 Col. 348; 35 Pac. 744; Scott* v. *Rainier Power and Railway Co., 13 Wash. 108; 42 Pac. 531.*

The utmost, therefore, that can be contended for by the trust company is, that when this receiver found a contract of the Public Service Corporation he was put to an election to carry it out or not to carry it out.

Thus far it is a matter of no consequence whether this contention be sound or not, because, if it be held that the receiver in this case elected to carry out the contract between the Conover company and the Public Service Corporation, the consequences are that upon doing so he would receive the full consideration thereof, namely, $16,500.

It is necessary, therefore, in order that the trust company should succeed in its contention, that it make good a further insistment. This further insistment is that, in electing to fulfill the contract with the Public Service Corporation, the receiver made good their assignment of a portion of the consideration to be received for that contract.

I do not think, in the first place, that it can be successfully contended that because a receiver elects to fulfill a contract he thereby is obligated to incidental and collateral claimants con-

cerning that contract which obtained in favor of third parties, and which are no part of the contract concerning which he is held to have made his election. *United Electric Sec. Co. v. Louisiana Electric Light Co., 71 Fed. Rep. 615; affirmed, Circuit Court of Appeals, sub nom., General Electric Co. v. Whitney, 74 Fed. Rep. 664.*

This case is much stronger than the case at bar, because the electric light company, which had a contract with the city, had assigned a portion of its money to come due from the city to a bank, and the bank had given notice to the city. The receiver was found to have elected to fulfill the contract with the city with full knowledge of the assignment, but it was held that he did not thereby elect to fulfill the contract of assignment.

They seem to have taken the theory heretofore suggested by me that an assignment is really two contracts, one agreeing to give the lien and the other giving the lien, and this case holds that this latter branch of the assigning contract is executory.

But there is another reason which is equally strong, if not stronger, against the contention of the trust company.

It seems to me that it is elemental that where one is put to an election with respect to a matter he can only be held to the extent that he had notice, or will be charged in law to have had notice concerning the subject-matter of his election.

In this case the trust company had given no notice to the Public Service Corporation of its assignment of April, 1904, and the receiver had received no notice thereof.

When, therefore, the receiver, in view of the trust company, was called upon to make election as to whether he would fulfill the contract of the Conover company with the Public Service Corporation, he is only charged with notice of that contract.

If he had gone, as it is presumed he did go, to the Public Service Corporation, he would only have learned that it was prepared to fulfill its part of that contract, and that, upon his delivering the machines to it, it would pay to him $16,500.

I have heretofore cited the cases in which it is held that notice to the third party is not necessary to make an equitable assignment good. But I do not think that those cases apply to this situation.

As has been heretofore said, I think it clear that an equitable assignee of money to become due in the future, under a contract between the assignor and a third party, takes all the risks that inhere in the situation.

One of these risks inhering in this situation was that the assignor might become insolvent.

If the conclusion be not correct which I have heretofore reached and stated, that such insolvency results in the non-fulfillment of the contract by the assignor, and therefore the equitable assignee takes nothing, and if I be also incorrect in my further conclusion that the action of the receiver in this case may not be construed as a fulfilling of the contract by the Conover company, I think it sound that, in view of the reasons heretofore stated, the trust company, having neglected to give notice of its assignment to the Public Service Corporation, cannot now assert the same against the receiver.

It is only by holding that the receiver elected to carry out the contract to which their right is alleged to attach that the trust company can succeed at all, and I am clear that he must not be held to have elected to do that of which he had no knowledge, and of which he cannot be charged with knowledge.

The disastrous consequences of a contrary decision upon this point are so obvious as only to require mention.

There is another feature of this case which makes against the claim of the trust company.

The receiver, who was appointed under the statute on the 1st of August, 1904, had been previously appointed temporary receiver pending the suit.

Prior to the 1st of August, 1904, he had presented a petition and obtained an order to show cause, returnable on the 1st of August, 1904, of which notice was given to all of the stockholders and creditors of the insolvent corporation, including the trust company.

That petition was for leave to issue receiver's certificates to obtain money with which to complete the unmanufactured product of the company.

Upon the return of that order no one made any objection thereto, and leave was given to the receiver to issue receiver's certificates up to $5,000.

The trust company bought some of those receiver's certificates.

Here, again, it seems to me it was the duty of the trust company to have acquainted the receiver of its claim to preference, or to take the consequences of not doing so.

By not informing the receiver, I think the trust company estopped itself to now claim preference.

If the receiver, upon taking possession of the assets of the company, had sold them in the condition in which they then were, the trust company would have taken nothing under its assignment.

If the receiver had manufactured the machines in question and sold them to some other vendee than the Public. Service Corporation, the trust company would have had no preference.

The utmost extent to which I think the trust company can claim the law to be in its favor (and I do not concede that this is the law), is that a receiver, informed of a contract made by the corporation, and informed that a portion of the contract price to be received by the corporation had been assigned, will be held to have elected to fulfill the contract and thereby made good the assignment.

But the very strength of this contention rests upon the information had by the receiver, and since it appears in this case that they refrained from informing the receiver and had refrained from informing the other contracting party of the assignment, I hold that they have no preference thereunder.

My conclusions, therefore, are that in any event the assignment for $8,250 can only stand for $5,470.

· That under such assignment the trust company did not obtain a lien at the time thereof, and there cannot be a lien thereunder until the money is earned by the assignor.

That since the money was not earned by the assignor (the Conover company), the trust company never acquired a lien.

That whatever the rights of the trust company might have been if it had· given notice of its assignment to the Public Service Corporation, it cannot, in default of having given such notice, maintain its priority against the receiver.

That having received notice of the intention of the receiver

to borrow money, &c., it was the duty of the trust company to give notice of its assignment, or be estopped from asserting its priority thereunder.

The result is that the appeal, with respect to this assignment is dismissed, and it is adjudged that the trust company is a general creditor to the extent of $5,470 on this account, and I will so advise.

CLAIM OF GREENVILLE COAL AND ICE COMPANY.

*Mr. George Holmes,* for the Greenville Coal and Ice Company.

*Mr. J. Merritt Lane,* for the receiver.

The Greenville Coal and Ice Company claims preference upon five assignments. The form of these assignments is practically identical, and one will serve as a model:

"MAY 28TH, 1904.

"We hereby assign to the Greenville Coal and Ice Co. the sum of three hundred and ten dollars ($310) out of our bill to the Public Service Corporation amounting to $433.69, and dated Jan. 28th, 1904.

"The above money is to be used for pay-roll.

"THE CONOVER M'F'G Co.,
"E. K. CONOVER, *Prest.*"

The assignment of June 18th, 1904, is for $380 out of second payment on Public Service Corporation contract amounting to $4,950.

The assignment of June 11th, 1904, is for $207.29, out of balance due from Allis Chalmers Company, amounting to $840, and also $164.33, public service repair bill, dated April 26th, 1904.

The assignment of June 6th, 1904, is for $300, out of "our balance of account due from Allis Chalmers Company, amounting to $840."

The assignment of June 4th, 1904, is of "our bill to Public Service Corporation, amounting to $433.69, dated January 28th, 1904."

It will be observed that the assignments of May 28th and of

June 4th cover the same fund, and as the June 4th assignment deals with it all, that of May 28th must be disregarded.

The only authority shown to bind the corporation is the following extract from its minutes.

"*Resolved*, That the president and treasurer be hereby authorized to borrow money for pay-rolls or other necessary payments from the Greenville Coal and Ice Co., and same is to be returned to them out of the first collections following such loans."

Mr. Cogan was the treasurer of each of the corporations and was a director of the Conover Company.

He testifies, in exact accordance with the provisions of the resolution above quoted, that the understanding was that the Conover company was to collect its moneys and out of the funds collected pay to the Greenville Coal and Ice Company.

The authorities are collected and cited in the Greenville Banking and Trust Company appeals, which hold that a president may not bind his corporation by any act in excess of his authority; and also those cases which establish the principle that whether an equitable assignment has been made is to be determined by the intention as proved.

It is entirely clear in this case that there was no authority given the president by the corporation to make the assignments to the Greenville Coal and Ice Company which he made.

The resolution and the testimony both show that the intention of the parties was an agreement to pay out of a particular fund.

The cases which establish that this is not an equitable assignment are referred to in my conclusions in the Greenville Banking and Trust Company's appeal.

No notice of these assignments was given to the third party, and the Greenville Coal and Ice Company also took some of the receiver's certificates.

The same conclusions making against the validity of their assignments as are stated in disposing of the appeals of the Greenville Banking and Trust Company must be here applied.

The result is that the adjudication of the receiver is sustained and the appeal is dismissed.

CLAIM OF THOMAS COGAN.

*Mr. George Holmes,* for Thomas Cogan.

*Mr. J. Merritt Lane,* for the receiver.

This claim is based upon the provisions of a paper signed by various employes of the Conover Manufacturing Company reading as follows:

"JERSEY CITY, N. J., July 16th, 1904.

"We, the undersigned, employes of the Conover Manufacturing Company, hereby separately and collectively assign to Thomas Cogan the amounts respectively set opposite our names, same amounts being our respective pay for the week ending July 14th, 1904."

The aggregate of the amounts is $216.

The employes are given a first lien under section 83 of the statute.

But it has been held that if the employe assigns his claim before the insolvency is decreed there is at that time no lien in his favor, and his assignee therefore acquires no lien. *Delaware, Lackawanna and Western Railroad Co.* v. *Oxford Iron Co., 33 N. J. Eq.* (6 *Stew.*) *192* (at *pp. 196, 197*) (*Vice-Chancellor Van Fleet, 1880*).

Since at the time this assignment was made to Mr. Cogan (July 16th, 1904) the defendant company had not been decreed to be insolvent, the amounts assigned to him by the employes were merely unsecured debts, and he can only prove them as such.

The result is that the adjudication of the receiver is confirmed and the appeal is dismissed.